Audrey Gillis WALL and the North Carolina Teachers Association, a corporation, Appellants,

v.

The STANLY COUNTY BOARD OF EDUCATION, a public body corporate of Stanly County, North Carolina, Appellee.

No. 11019.

United States Court of Appeals Fourth Circuit.

Argued March 6, 1967.

Decided May 19, 1967.

J. LeVonne Chambers, Charlotte, N. C. (Conrad O. Pearson, Durham, N. C., Jack Greenberg and James M. Nabrit, III, New York City, on brief), for appellants.

Henry C. Doby, Jr., Albemarle, N. C. (Staton P. Williams, Albemarle, N. C., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, and SOBELOFF, BOREMAN, BRYAN, BELL, WINTER and CRAVEN, Circuit Judges, sitting en banc.

CRAVEN, Circuit Judge:

It is now firmly established in this circuit (1) that the Fourteenth Amendment forbids the selection, retention, and assignment of public school teachers on the basis of race; (2) that reduction in the number of students and faculty in a previously all-Negro school will not alone justify the discharge or failure to reemploy Negro teachers in a school system; (3) that teachers displaced from formerly racially homogeneous schools must be judged by definite objective standards with all other teachers in the system for continued employment; and (4) that a teacher wrongfully discharged or denied reemployment in contravention of these principles is, in addition to equitable remedies, entitled to an award of actual damages.[1]

In derogation of these principles, the district court denied relief to Negro school teacher Mrs. Audrey Wall. We reverse.

## I.

The facts found by the district court are briefly stated [2] below.

Audrey Gillis Wall, a Negro, is, in the words of the district judge, a teacher of "unchallenged professional and educational qualifications, who has thirteen years of teaching experience, predominantly in Stanly County," North Carolina. She holds A.B. and M.S. degrees and, despite some deficiencies in performance, was recommended by her principal for reemployment for the school year 1965–66. The School Board approved the principal's recommendation of reemployment, contingent *only* upon the allocation of the requisite teaching positions by the State.

Integration came to the Stanly County school system ten years after Brown v. Board of Education, 347 U.S. 483, 74

1. Chambers v. Hendersonville City Bd. of Educ., 364 F.2d 189 (4th Cir. 1966); Johnson v. Branch, 364 F.2d 177 (4th Cir. 1966); Wheeler v. Durham City Bd. of Educ., 363 F.2d 738 (4th Cir. 1966); Franklin v. County School Bd., 360 F.2d 325 (4th Cir. 1966). *Chambers*,

*Johnson*, and *Franklin* were authored by Judge J. Spencer Bell, who would have written the opinion for the court in this case but for his death on March 19, 1967.

2. For a more complete statement of findings, see Wall v. Stanly County Bd. of Educ., 259 F.Supp. 238 (M.D.N.C.1966).

S.Ct. 686, 98 L.Ed. 873 (1954), occurring with the transfer of *two* Negro pupils from a Negro school to a formerly all-white school in the school year 1964–65. The system at that time consisted of seventeen public schools and some 7,000 students, of which approximately fifteen percent were Negro.

For the year 1965–66 and prior thereto, there was complete segregation of white and Negro teachers, i. e., no Negro teacher taught white pupils, and no white teacher taught Negro pupils. The first break in teacher segregation occurred in January 1966 when a Negro teacher was employed to teach history in a mostly white school.

On or about June 5, 1965, the allocation of teacher spaces for the school year 1965–66 was received from the North Carolina Board of Education. For the first time such spaces were granted to the Stanly County Board of Education without reference to race and without designation of the school in which the spaces might be used by the Stanly County Board. During the spring of 1965, the Board adopted a freedom of choice plan of pupil enrollment, and as a result thereof, over 300 Negro pupils who had formerly attended all-Negro schools were assigned to formerly white schools for the school year beginning September 1965.

As found by the district court, "the shifts in pupil enrollment as result of the 'freedom of choice plan' resulted in a decrease in the allocation of teacher spaces to the Negro schools and an increase in the allocation of teacher spaces to formerly white or predominantly white schools." Despite this, and again in the words of the district court, "the Board adopted no specific provisions to govern assignment of teachers who might be affected by the shifting of pupil enrollment. The Board did not solicit opinions from either teachers or principals as to what, if any, policy might or should be adopted. Principals were not advised as to whether teachers whose positions were affected by the aforesaid reduced allotments to Negro schools would be re-assigned to another school in the system. The Board did not advise the several white principals that they could employ Negro teachers nor Negro principals that they could hire white teachers."

## II.

■■ The meaning of the foregoing is very plain. Obviously the Board considered that transfer of Negro pupils from a Negro school diminished the need for Negro teachers in the Negro school, causing Mrs. Wall to lose her job. The premise of such a proposition is that Mrs. Wall was not employed as a teacher in the Stanly County school system but was employed *as a Negro teacher in a Negro school*. Such a premise is unlawful. It is repugnant to the Fourteenth Amendment, which "forbids discrimination on account of race by a public school system with respect to employment of teachers." Franklin v. County School Bd., 360 F.2d 325, 327 (4th Cir. 1966), citing Bradley v. School Bd., 345 F.2d 310, 316 (4th Cir.), rev'd on other grounds, 382 U.S. 103, 86 S.Ct. 224, 15 L.Ed.2d 187 (1965).

In his opinion, the district judge said: "It is obvious that if the teacher spaces at Lakeview had not been reduced, Mrs. Wall would have been re-employed for the school year 1965–66." His finding is fully supported by the evidence. It requires reversal of the decision below because Mrs. Wall was not allowed by the School Board to compete for a teaching position in the system on the basis of her merit and qualifications as a teacher. Solely because of her race, she was not considered in comparison with other teacher applicants, about fifty of whom had not previously taught in the system. This sort of invidious discrimination offends the Constitution. E. g., Chambers v. Hendersonville City Bd. of Educ., 364 F.2d 189 (4th Cir. 1966); Franklin v. County School Bd., 360 F.2d 325 (4th Cir. 1966); see generally Note, Discrimination in the Hiring and Assignment of Teachers in Public School Systems, 64 Mich.Law Review 692 (1966). We reject the erroneous conclusion of the district court that the decisions of this circuit

in *Chambers* and *Franklin,* requiring an objective and comparative evaluation with *all* other teachers, are not controlling.

### III.

■ Since Mrs. Wall was recommended for reemployment by her principal and his recommendation approved by the School Board—subject only to the allotment of spaces, which was controlled by the same Board—we think the belated and invidiously unfair rejection of her application for reemployment entitles her to recover damages. Smith v. Bd. of Educ., 365 F.2d 770, 784 (8th Cir. 1966); Chambers v. Hendersonville City Bd. of Educ., 364 F.2d 189, 193 (4th Cir. 1966); Johnson v. Branch, 364 F.2d 177, 182 (4th Cir. 1966); Rolfe v. County Bd. of Educ., 11 Race Rel.L.Rep. 1841, 1846–47 (E.D.Tenn.1966); Macklin v. County Bd. of Educ., 11 Race Rel.L.Rep. 805, 806 (M.D.Tenn.1966). Mrs. Wall managed to secure employment elsewhere for the school year 1965–66. Proper damage elements will include salary differences, if any, and moving expenses to her new residence. If she should be reemployed in the Stanly County system for the school year 1967–68, she should also be awarded the reasonable expense of moving back to Stanly County.

We further instruct the district court to order the Board to put Mrs. Wall, if she wishes, on the roster of teaching applicants for the school year 1967–68, and to require that she then be considered for employment *objectively* in comparison with *all* teachers. The Board will be ordered to consider her twelve-year experience in the Stanly County school system to the extent it considers seniority as a factor in the retention of other teachers. The Board should be specifically enjoined from considering her race as a factor in determining whether or not she will be reemployed.

■ If Mrs. Wall should be denied reemployment, the district court will re-

quire a full report of the reasons for denial, and will scrutinize it to assure that the School Board has acted in good faith and without regard to race. Because of the Board's prior discrimination against Mrs. Wall, it will carry "the burden of justifying its conduct by clear and convincing evidence." Chambers v. Hendersonville City Bd. of Educ., 364 F.2d 189, 192 (4th Cir. 1966).

### IV.

On April 15, 1966, the School Board adopted an extremely comprehensive plan governing the hiring and assigning of personnel in the public schools. The plan establishes standards and procedures for rating and evaluating teachers. It contains definitions and instructions for the application of the standards to a given teacher and methods by which attributes of the teacher are to be evaluated. We think this exhaustive plan, if implemented in good faith, is fully sufficient to assure that "staff and professional personnel will be employed solely on the basis of competence, training, experience, and personal qualification and shall be assigned to and within the schools of the administrative unit without regard to race, color, or national origin * * *."[3]

Aside from the facial adequacy of the new plan of teacher recruitment and assignment, we are advised in open court by counsel that for the school year 1966–67 some progress has been made in integrating the faculty and that now some six or seven Negro teachers are teaching in formerly white schools. On remand, we instruct the district court to make further inquiry into the present degree of implementation of the plan and to consider de novo the question of whether or not an injunction ought to issue. Only if the district court concludes that the plan is being implemented according to its tenor, i. e., that teachers are being hired and assigned without racial discrimination, may it reject the prayer for an injunction. The district court will retain jurisdiction to consider motions in the cause

3. Resolution on Teacher Hiring Policies, Stanly County, North Carolina, Board of Education, April 15, 1966.

279

as may be necessary to assure fair and equal treatment of *all* teachers and to assure that the plan will not become a paper proclamation of good intentions to be filed away and forgotten.

Reversed and remanded.