391 F.2d 77
 9 Fair Empl.Prac.Cas. 1111, 1 Empl. Prac.
Dec. P 9852
Mrs. Elvira S. ROLFE and Mrs. Bernice L. Peebles, Plaintiffs-Appellees,
v.
COUNTY BOARD OF EDUCATION OF LINCOLN COUNTY TENNESSEE.
etc., et al., Defendants-Appellants.
 No. 17498.
 United States Court of Appeals Sixth Circuit.
 Feb. 19, 1968.
 
 Robert W. Stevens, Fayetteville, Tenn., (Stevens & Bagley, Fayetteville, Tenn., on the brief), for appellants.
 Avon N. Williams, Jr., Nashville, Tenn. (Jack Greenberg, James M. Nabrit, III, Michael J. Henry, New York City, Z. Alexander Looby, Nashville, Tenn., on the brief), for appellees.
 Before CELEBREZZE and COMBS, Circuit Judges, and CECIL, Senior Circuit judge.
 COMBS, Circuit Judge.
 
 
 1
 The Superintendent of Schools and the County Board of Education of Lincoln County, Tennessee, appeal from a judgment of the District Court holding that the discharge of two schoolteachers, appellees here, was discriminatory because it was based on consideration of race.
 
 
 2
 The judgment directs that the two teachers be reinstated; that they be compensated in damages; that the board of education establish objectives for the employment and retention of teachers consistent with due process and equal protection of the laws; and that counsel fees in favor of the teachers be taxed as costs.
 
 
 3
 The court's jurisdiction was invoked under 28 U.S.C. 1331 and 1343(3) and 42 U.S.C. 1983 (Civil Rights Act).
 
 
 4
 It is established by the record and was found by the district court:
 
 
 5
 The appellees, Mrs. Rolfe and Mrs. Peebles, are Negroes; they were non-tenure teachers in the Lincoln County school system assigned to West End High School which had an all Negro faculty and all Negro student body. Until the school year 1965-66, the Lincoln County public schools were operated under a compulsory biracial system. In order to qualify for federal funds, receipt of which was contingent upon compliance with the Civil Rights, Act, the board of education adopted a plan of desegregation which was submitted to the United States Department of Health, Education and Welfare. The desegregation plan provided that integration of teachers and other school personnel would begin with the 1965-66 school term. While the desegregation plan was adopted on May 10, 1965, it was apparently intended that, for the 1965-66 school year, complete faculty segregation would be continued at the all Negro West End High School, as well as at the predominantly white Central High School. In any event, only Negro teachers were employed at West End and only white teachers at Central for the 1965-66 school term. Fourteen new teachers were hired for the Lincoln County school system, all of whom were white. In May, 1965, the superintendent of schools appeared before the teachers of West End High and told them that the 'chances were' that school would lose some of its teachers as a result of the desegregation plan.
 
 
 6
 During the first week of the 1965-66 school term, which commenced about August 23, 1965, there was a significant decrease in enrollment at West End High School. Many students transferred to Central and others transferred to other schools.
 
 
 7
 The Department of Health, Education and Welfare approved the Lincoln County desegregation plan on August 31, 1965. The board of education met on September 7 to review the situation and take the 'necessary steps to correct its teaching load.' Teachers were transferred from one school to another and from one position to another. Of the non-tenure Negro teachers in the system, only one remained when the board had finished. No teacher of the Caucasian race was discharged. Five members of the all Negro faculty at West End were discharged, effective at the close of the following school day. Two of the five had tenure status and were given other teaching positions in the system. Another was given a job in the superintendent's office. No provision was made for Mrs. Rolfe and Mrs. Peebles.
 
 
 8
 Both Mrs. Rolfe and Mrs. Peebles had taught for two years at West End and had accepted reelection for the 1965-66 school year. Mrs. Rolfe was a science teacher and has six years teaching experience prior to coming to Lincoln County. Mrs. Peebles was a mathematics teacher and had taught two years prior to joining the Lincoln County system. Each of them held the degree of Bachelor of Science. Neither of them had ever received any reprimand or complaint about the performance of their duties as teachers.
 
 
 9
 Although teachers were elected for employment within the system as a whole and the board reserved the right to transfer a teacher to another school, there were no definite objective standards for comparison of all teachers within the system. Non-tenure teachers were considered as new applicants each school year. When the decrease in enrollment at West End necessitated a decrease in the faculty, only members of the West End faculty were considered for reassignment or discharge. The only comparison made between teachers in the system was the comparison of each West End High teacher with others in the same school.
 
 
 10
 The district judge held on this state of facts that the comparison of Mrs. Rolfe and Mrs. Peebles only with other Negro teachers on the same faculty, for the purpose of determining discharge, was so restrictive as to be discriminatory. We agree.
 
 
 11
 At this date it is beyond contention that the Fourteenth Amendment to the United States Constitution forbids the selection and assignment of teachers on the basis of race. The board of education does not contest the finding that Mrs. Rolfe's and Mrs. Peebles' qualifications were compared only with those of the other faculty members at West End High in determining who would be discharged. They present the argument that five factors in the case prevent a ruling of discrimination. Those factors are: (1) the defendants could not have foreseen the decrease in enrollment at West End and by the time they became aware of the situation 'it was too late to compare their qualifications with other teachers in the county and discharge the latter to create positions for them;' (2) Mrs. Rolfe and Mrs. Peebles had been reelected to West End High and their assignments could not be changed by the superintendent except with the approval of the board; (3) under Tennessee law the plaintiffs were not discharged but rather their jobs were abolished and the abolished jobs were located at West End High School; (4) the board of education was entitled to rely upon approval of their desegregation plan by the Department of Health, Education and Welfare; and (5) Mrs. Peebles was compared objectively with another non-tenure teacher in consideration for a vacated teaching position and was rejected because the other candidate had superior qualifications.
 
 
 12
 The board's position cannot be sustained. The facts in this case present essentially the same picture as those in Wall v. Stanly County Board of Education, 378 F.2d 275, 277 (4th Cir. 1967), where it was said:
 
 
 13
 'Obviously the Board considered that transfer of Negro pupils from a Negro school diminished the need for Negro teachers in the Negro school, causing Mrs. Wall to lose her job. The premise of such a proposition is that Mrs. Wall was not employed as a teacher in the Stanly County school system but was employed as a Negro teacher in a Negro school. Such a premise is unlawful. It is repugnant to the Fourteenth Amendment, which 'forbids discrimination on account of race by a public school system with respect to employment of teachers.' (Citing cases.)'
 
 
 14
 The rule is that teachers displaced from a school with a racially homogeneous faculty, because of a decrease in students, must be judged for continued employment by definite objective standards with all other teachers in the system. Wall v. Stanly County Board of Education, supra; Chambers v. Hendersonville City Board of Education, 364 F.2d 189 (4th Cir. 1966); Smith v. Board of Education of Morrilton School District No. 32, 365 F.2d 770 (8th Cir. 1966); United States v. Jefferson County Board of Education, 372 F.2d 836 (5th Cir. 1966), aff'd on rehearing en banc, 380 F.2d 385 (1967); Stell v. Savannah-Chatham County Board of Education, 255 F.Supp. 88 (D.C.Ga.1966).
 
 
 15
 Moreover, where a history of racial discrimination is shown to exist, as is the case here, the burden of showing nondiscrimination is on the party having the power to produce the facts. Chambers v. Hendersonville City Board of Education, supra.
 
 
 16
 It was a foregone conclusion that if the desegregation plan was permitted to work there would be a decrease in enrollment at West End High School, with a corresponding reduction in the faculty. The superintendent very commendably admitted as much when he appeared before the West End teachers in the Spring of 1965. Yet, with this knowledge in its possession, the board assigned only Negro teachers to West End High in violation of its own plan which had been submitted to the Department of Health, Education and Welfare. The board is not in position to feign surprise when faced with a situation which it had knowingly created. In the determination of which teachers in the school system would be discharged, Mrs. Rolfe and Mrs. Peebles were entitled to have their qualifications compared with all other non-tenure teachers within the system.
 
 
 17
 The board makes the point that in December, 1965, when a vacancy occurred in another school in the system, Mrs. Peebles was considered for that position but the qualifications of the other candidate were found to be superior. This nunc pro tunc action by the board did not improve the situation. Mrs. Peebles had been discharged by the imposition of discriminatory standards. Her subsequent employment would have mitigated the damages but would not have made right what was wrong in the first place.
 
 
 18
 Complaint is made by the board that the court's judgment finding discrimination is based only on evidence heard at the hearing on motion for preliminary injunction and that it was not given a full evidentiary hearing on the merits of the case. The board was not foreclosed from presenting its side of the case. At the conclusion of the hearing on the motion for preliminary injunction, the judge inquired whether 'the Court now has the full picture * * * In other words, can the evidence the Court has now received be the evidence on trial?' Counsel for the board did not at that time express any desire to offer additional evidence. Although counsel subsequently requested, and was denied, the opportunity to introduce other evidence, it appears from the record that this evidence was largely repetitious and irrelevant to the issues in the case. It is said in the district judge's memorandum opinion that the case had been fully developed and well briefed. We agree.
 
 
 19
 Complaint is also made about the amount of damages and the awarding of attorney fees. The judgment in favor of Mrs. Rolfe is for $2,563.31; Mrs. Peebles was awarded $3,173.60. Counsel fees in the amount of $250.00 were awarded for each of the parties. The district judge held that Mrs. Rolfe and Mrs. Peebles were entitled to recover as damages the amount they would have earned if they had been permitted to teach, less what they might have earned in some other suitable employment by reasonable diligence. Godson v. MacFadden, 162 Tenn. 528, 39 S.W.2d 287 (1931). Mrs. Rolfe earned $1,425.00 from other sources; Mrs. Peebles earned nothing.
 
 
 20
 The court properly held that the burden of proof in regard to mitigation of damages was on the board. John S. Doane Co. v. Martin, 164 F.2d 537 (1st Cir. 1948); International Correspondence School v. Crabtree,162 Tenn. 70, 34 S.W.2d 447, 78 A.L.R. 330 (1931). We find no error in the fixing of damages. Certainly, the amount fixed is not clearly erroneous.
 
 
 21
 On the question of allowance of attorney fees the judge found a long, continuing pattern of evasion and obstruction of the desegregation of schools in Lincoln County. In light of this factual background, the allowance of attorney fees was proper. Bell v. School Board of Powhatan County, Virginia, 321 F.2d 494, 500 (4th Cir. 1963). There is no contention that the fees are excessive.
 
 
 22
 The judgment is affirmed.