Addie **MOORE** et al., Appellants,

v.

The **BOARD OF EDUCATION OF the CHIDESTER SCHOOL DISTRICT NO. 59, CHIDESTER, ARKANSAS,** et al., Appellees.

No. 20416.

United States Court of Appeals, Eighth Circuit.

Sept. 13, 1971.

Richard L. Mays, Little Rock, Ark., Philip E. Kaplan, Walker, Kaplan, Lavey & Mays, Little Rock, Ark., Jack Greenberg, James Nabrit, III, Buford Kaigler, New York City, for appellants.

William I. Prewett, El Dorado, Ark., Brown, Compton, Prewett & Dickens, El-Dorado, Ark., for appellees.

Before LAY, HEANEY and BRIGHT, Circuit Judges.

HEANEY, Circuit Judge.

The principal question in this appeal is whether the Board of Education of the Chidester School District has unlawfully discriminated against the plaintiff black teachers by failing to provide employment for them following the integration of the previously segregated school system.

Chidester School District has historically operated a dual school system with the black pupils attending Pleasant Hills School and the white pupils attending

Chidester School.[1] In 1967–68 and 1968–69, the school district operated under a freedom of choice integration plan. Under this plan, some black students attended the Chidester School, but the Pleasant Hills School remained completely black. In 1968–69, the racial composition of the 331 pupils within the system was 244 black and 87 white.[2] The racial composition of the 26 teachers employed by the district was 15 black and 11 white.

Prior to the beginning of the 1969–70 school year, the district voluntarily adopted an integration plan closing the black school and requiring all pupils to attend the Chidester School. As part of the consolidation, the district, on May 31, 1969, gave notice by mail to 5 black teachers, including the 4 plaintiffs, that their contract of employment would not be renewed. All white teachers were offered new contracts. By the end of the school year 1969–70, 18 (or 19) teachers were employed.[3] Of these, only 7 (or 8) were black and 11 were white.

The plaintiffs brought this action in the District Court under 42 U.S.C. §§ 1981 and 1983 to challenge the lawfulness of their dismissals[4] under the due process and equal protection clauses of the Fourteenth Amendment. This appeal is from the decision of the United States District Court for the Western District of Arkansas dismissing their complaint.

We are convinced, from reading the record and the District Court's decision, that the District Court proceeded on the basis that the plaintiffs had the burden of proving that their dismissals were discriminatory. In this, it erred.

■ While the burden of proving discrimination would under some circum-stances rest with the dismissed teachers, under other circumstances, we have held it shifts to the school district. A school district must show by "clear and convincing" proof that the dismissal of black teachers was not unlawfully discriminatory if the district has a long history of segregation, if there is a decrease in the number of black teachers, if the proportion of the black faculty to white faculty is significantly less than the proportion of black to white students, and if only black teachers are dismissed. Jackson v. Wheatley Sch. Dist. No. 28 of St. Francis Co., Ark., 430 F.2d 1359, 1363 (8th Cir. 1970); Haney v. County Board of Education of Sevier County, 429 F.2d 364, 370, 371 (8th Cir. 1970); North Carolina Teachers Ass'n v. Asheboro City Bd. of Ed., 393 F.2d 736, 743 (4th Cir. 1968) (en banc); Rolfe v. County Board of Education of Lincoln County, Tenn., 391 F.2d 77, 80 (6th Cir. 1968); Chambers v. Hendersonville City Board of Education, 364 F.2d 189, 192 (4th Cir. 1966) (en banc). Each of these factors is present here.

The failure of the District Court to properly assign the burden of proof would be grounds for remand unless we were satisfied that the school district had met that burden. We are not so satisfied here. Furthermore, we believe that there are other sound reasons why a reversal of the trial court is required.

■ First, the record shows that some teachers voluntarily declined to renew their contracts. The board did not offer any of the black teachers, whose contracts had not been renewed, the opportunity to fill any of the vacancies arising out of these resignations. While this Court has not had occasion to rule directly[5] on the obligation of a Board of

---

1. The only faculty integration prior to the 1969–70 school year was the employment of a black librarian part-time at the Chidester school.

2. For 1969–70, the board projected an enrollment of 267 blacks. The record does not indicate a projection of white enrollment.

3. The record is ambiguous as to which figure is the correct one.

4. Hereafter, we will, for the sake of convenience, refer to the termination of plaintiffs' employment as their "dismissals."

5. Where as in Brooks v. School District of Moberly, Missouri, 267 F.2d 733, 740 (8th

Education under these circumstances, the Fourth and Fifth Circuits have held that even if an initial dismissal is based on nondiscriminatory standards applied in a nondiscriminatory manner, a teacher possessed of the requisite minimum qualifications is entitled to the first available job without the board's comparing him with new applicants. Singleton v. Jackson Municipal Separate School Dist., 419 F.2d 1211, 1218 (5th Cir. 1970); North Carolina Teachers Ass'n v. Asheboro City Bd. of Ed., *supra* 393 F.2d at 744; Chambers v. Hendersonville City Board of Education, *supra* 364 F.2d at 192.

> " * * * When a system's needs change as a result of compliance with the basic law of the land outlawing racial discrimination, the equal protection clause will not permit the teachers so displaced to be treated as new applicants to the system, unless all teachers, including those to be retained, are so treated. * * * "

North Carolina Teachers Ass'n v. Asheboro City Bd. of Ed., *supra* 393 F.2d at 744.

In our view, the rule is a sound one and both plaintiffs Cross and Williamson fall within it.

■ Both of them possessed the minimum teaching qualifications required by the district. Indeed, the District Court commended them for their competence. In the case of Cross, a vacancy arose in his own teaching area which was filled by a teacher with none of Cross's experience. In Williamson's case, the vacancies arose in areas in which he had not been teaching, and in which he did not have a teaching certificate. But it was the common practice within the district to use teachers outside the area of their state certification. For instance, in the 1969–70 school year,

a teacher certified in physical education taught typing. Not only was he not certified in this area, but he had no experience in the area at all. As School Superintendent Tolleson testified: "Well this [teacher] stayed with the class and I doubt that you would call it teaching typing." Furthermore, Williamson himself had taught outside of his area of certification during the 1968–69 year. Here, where the board has not shown that Williamson was incapable of teaching in the positions which opened outside of his area of certification, we find that he, as well as Cross, was racially discriminated against when he was not offered a position. If a school board seeks to impose as a minimum requirement for employment that a teacher be certified in the area he is to teach, then that requirement must be applied to all teachers within the system.

■ Second, the record shows that the board discriminated against the plaintiffs Moore and Ellingberg. A board, in integrating its school system, should ordinarily make provision for a plan governing the assignment and dismissal of teachers. Such a plan should establish standards and procedures for evaluating teachers. It should contain definitions and instructions for the application of the standards to a given teacher and should set forth methods by which the teacher is to be evaluated. Haney v. County Board of Education of Sevier County, *supra* 429 F.2d at 371; Singleton v. Jackson Municipal Separate School Dist., *supra* 419 F.2d at 1218; Wall v. Stanly County Board of Education, 378 F.2d 275, 278 (4th Cir. 1967).

■ Because this school district is so small, it might be permitted to have a less formal procedure; but it must, nonetheless, evaluate all teachers [6] with-

---

Cir. 1959), all teachers within the system were evaluated at the time the vacancies arose, there is no discrimination.

6. Where full and fair evaluation has taken place, the dismissal of teachers has been upheld. Walton v. Nashville, Arkansas Special School Dist. No. 1, 401 F.2d 137 (8th Cir. 1968); Brooks v. School Dis-

trict of City of Moberly, Missouri, *supra*. Irrespective of comparative evaluations, the board is not required to employ someone who cannot meet minimum standards of employment. However, whether the board is evaluating minimum requirements or comparing teachers, it must *apply* these standards so as not to discriminate against black teachers.

in the school district, using definite nondiscriminatory standards before dismissing any of them. Jackson v. Wheatley Sch. Dist. No. 28 of St. Francis Co., Ark., *supra* 430 F.2d at 1362; Wall v. Stanly County Board of Education, *supra* 378 F.2d at 276.

We concede that there is some ambiguity in the decisions of this Court as to whether the standards must be objective. Thus, in Haney v. County Board of Education of Sevier County, *supra*, 429 F.2d at 372, we modified a District Court order to " * * * require the * * * school board to adopt an *objective* and nondiscriminatory standard for the evaluation and retention of teachers * * *." (Emphasis added.) Other Courts also hold that the standards must be objective: Singleton v. Jackson Municipal Separate School Dist., *supra* 419 F.2d at 1218; Rolfe v. County Board of Education of Lincoln County, Tenn., *supra* 391 F.2d at 80; Wall v. Stanly County Board of Education, *supra* 378 F.2d at 276; Chambers v. Hendersonville City Board of. Education, *supra* 364 F.2d at 193. On the other hand, we stated in Smith v. Board of Education of Morrilton Sch. Dist. No. 32, 365 F.2d 770, 781 (8th Cir. 1966): " * * * Fitness for teaching rests upon a broad range of factors and encompasses numerous personality and character traits. * * *" See also Brooks v. School District of City of Moberly, Missouri, 267 F.2d 733, 737; Morris v. Williams, 149 F.2d 703, 708 (8th Cir. 1945).

██ To reconcile these decisions, we now make clear that a board of education is obligated to use objective nondiscriminatory standards in the employment, assignment and dismissal of teachers. A board may also consider established and previously announced nondiscriminatory

subjective factors in making such decisions. We emphasize, however, that: ·
" * * * race per se is an impermissible criterion for judging either an applicant's qualifications or the district's needs. And this applies equally to considerations described as environment or ability to communicate or speech patterns or capacity to establish rapport with pupils when these descriptions amount only to euphemistic references to actual or assumed racial distinctions. * * *"

Smith v. Board of Education of Morrilton Sch. Dist. No. 32, *supra* 365 F.2d at 782. Furthermore, subjective standards carry little weight in meeting the board's burden to prove clearly and convincingly that it is not discriminating where there has been a history of racial segregation since *Brown I*. Brown v. Board of Education of Topeka, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954).

The school board contends it has the required standards, and that the standards include the seniority of the teacher, whether the teacher was appropriately certified and whether the teacher was of good moral character. Assuming without deciding that the informal, oral standards the board used were sufficiently definite, the record clearly shows that they were not applied to Moore and Ellingberg in a nondiscriminatory manner.

██ It is argued that Moore lacked the requisite minimum qualifications for a teaching position in that she did not have a regular state teaching certificate.[7] We have held the requirement of appropriate certification to be a valid nondiscriminatory reason for the dismissal of a teacher. Jackson v. Wheatley Sch. Dist. No. 28 of St. Francis Co., Ark., *supra*, 430 F.2d at 1364. We find no reason to depart from this basic principle now, but the principle is one which

7. The board, at oral argument, alleged that a statute of the State of Arkansas forbids the employment of a teacher for longer than one year on a "blanket" certificate. The record indicates that, in past years, teachers with such certificates were employed for more than one year. The existence of such a statute or regulation was never raised below. Even at oral argument, no citation was given to such a statute. In light of these facts, we cannot accept this argument.

must be applied in a nondiscriminatory manner if it is to be applied at all. Here the board, both before [8] and after [9] integration, employed white teachers who were not certificated. Thus, it should have given Moore an opportunity to continue teaching in the system until such time as it adopted a nondiscriminatory rule against hiring noncertificated teachers, or alternatively given such teachers a reasonable time to obtain the necessary credentials.

It is argued that Ellingberg lacks the requisite minimum qualifications for employment in that she would not be a proper moral influence upon children. The charges against Ellingberg involve her pregnancy and her financial situation. Even if the board's allegations were based on fact, its decision to dismiss Ellingberg would still discriminate unlawfully. Ellingberg's alleged moral problems all existed while she taught at the black Pleasant Hills School. Her pregnancy was well known at that time. This Court has indicated:

"* * * It would appear that if the complaints were not such as to require action against the plaintiffs while they were serving in the Negro school, the complaints would not constitute a valid basis for refusal of employment in the integrated school. * * *"

Jackson v. Wheatley Sch. Dist. No. 28 of St. Francis Co., Ark., *supra* at 1363.

In the case of her financial situation, there was evidence that other teachers within the district were similarly situated.

In fairness to Ellingberg, however, it must be pointed out that the board rested its decision to dismiss her on insufficient evidence. Evidence used in dismissing teachers should not be vague and inconclusive. Jackson v. Wheatley Sch. Dist. No. 28 of St. Francis Co., Ark., *supra* at 1363. The board here conducted no independent investigation into the charges. Instead, the superintendent testified that the board relied on "gossip" for its source of information. Since the plaintiff was never informed of the charges against her before her dismissal, she never had the opportunity to dispute the charges. Indeed, at the trial, the plaintiff did offer explanation of her conduct. To protect the rights of black teachers during the integrating of its schools, a board should notify the teachers of any charges against them and give them an opportunity to meet such charges. Jackson v. Wheatley Sch. Dist. No. 28 of St. Francis Co., Ark., *supra* at 1363.

Furthermore, we find it difficult to recognize the validity of the moral standards used to evaluate Ellingberg because the board, prior to integration, had never established and announced that it would use such subjective standards in determining whether to employ or dismiss teachers. If it had done so, we would recognize the validity of the standards subject to the qualifications set forth above.

Having decided that the respondents have unlawfully discriminated against all four plaintiffs, we remand the case to the District Court. It shall:

(1) Order the board to notify the plaintiffs of present and future vacancies within the system and to offer such positions to the plaintiffs without comparing them with other applicants. Such obligation of the board " * * * shall extend only to the first such vacancy so offered to that teacher; irrespective of his acceptance or refusal of the first offered, he shall not be entitled to preference with respect to any subsequent va-

8. Before integration, the board employed Alvin Corder, a white, to teach physical education for the school year 1967–68. Corder did not have state certification. It also employed Frank McAffry, a white, to teach math in the school years 1967–68 and 1968–69, McAffry did not have state certification.

9. Following integration, the school board employed Vaneda Stinnett, a white, to teach typing during the school year 1969–70. Stinnett did not have state certification.

cancy." Smith v. Board of Education of Morrilton Sch. Dist. No. 32, *supra* 365 F.2d at 784. The board may further require noncertificated teachers to obtain a certificate within a reasonable time after reinstatement.

(2) Determine the extent to which each of the plaintiffs was damaged and the amount of such damage. The period for which damage may be shown is the period between the completion of the teachers' service at Pleasant Hills School and the filing date of this opinion, except that with respect to any teacher who pursuant hereto manifests a desire to obtain employment in the Chidester school system, the period will also include the time between the date of this opinion and the effective date of employment offered him. The normal rules of mitigation shall apply to these damage determinations. Smith v. Board of Education of Morrilton Sch. Dist. No. 32, *supra* at 784.

The judgment of the District Court is reversed and the case is remanded.