Faustino RIVERA–LOPEZ, Plaintiff,

v.

Antonio GONZALEZ–CHAPEL, Secretary
of Agriculture, et al., Defendants.

Civ. No. 597–73.

United States District Court,
D. Puerto Rico.

Dec. 8, 1975.

Ralph Vallone, Jr., Hato Rey, P. R., for plaintiff.

Jaime A. Rodríguez-Lecoeur, Atty., Dept. of Justice, Commonwealth of Puerto Rico, Rio Piedras, P. R., for defendants.

## OPINION AND ORDER

TOLEDO, Chief Judge.

This cause is before the Court pursuant to plaintiff's action for equitable relief and damages brought under Section 1983 of the Civil Rights Act, Title 42, United States Code and its jurisdictional counterpart, Title 28, United States Code, Section 1343, against the Secretary of Agriculture of the Commonwealth of Puerto Rico, Antonio Gonzalez Chapel, the Director of Personnel of the Commonwealth of Puerto Rico, Milagros Guzman, and the Auxiliary Secretary of Administration of the Department of Agriculture of the Commonwealth of Puerto Rico, Luis A. Crespo, in view of the termination of his employment at the Department of Agriculture of the Commonwealth of Puerto Rico. Plaintiff seeks redress before this Court alleging defendants have deprived him of rights and privileges secured by the First and Fourteenth Amendments to the Constitution of the United States.

Upon filing the complaint, plaintiff applied for a temporary restraining order.

The application was not granted and in lieu thereof an order to show cause was entered against defendants. Full hearings were had. Before the commencement of the hearings the parties agreed, with the Court's approval, to consolidate the application for preliminary and permanent injunction in order to avoid further hearings on this aspect of the case. The question of damages was left for further litigation, if necessary.

The Court having held the necessary hearings, having considered the extensive documentary and testimonial evidence and having considered the extensive post trial memoranda filed by the parties, enters the following:

## FINDINGS OF FACT

1. Plaintiff has been a career employee in the civil service of the Government of Puerto Rico since September 1944, and thereafter for twenty-nine uninterrupted years, having served during said years in various governmental functions and from September 8, 1969, as Director of the Arecibo Agricultural Region of the Department of Agriculture of the Government of the Commonwealth of Puerto Rico.

2. By September 1974, plaintiff would have accumulated thirty years of service and would have been eligible to a merit pension commensurate to his monthly salary for life, pursuant to the retirement plan for government employees of the Commonwealth of Puerto Rico.[1]

3. Plaintiff was recruited in August, 1969 as Director of the Arecibo Agricultural Region of the Department of Agriculture of the Commonwealth of Puerto Rico with executive duties with regard to 12 towns. His performance in that position was positive. He was so employed until June 30, 1973, at which time his official dismissal came to pass. He was informed of this action by defendant Antonio Gonzalez Chapel less than twenty two days prior to the effective date of dismissal.

1. The Retirement System for public employees of the Government of Puerto Rico appears at

Title 3, Laws of Puerto Rico Annotated, Section 761 et seq.

4. On November 3, 1972, plaintiff's position was changed from non-competitive to competitive by virtue of an official reclassification letter signed by the then Director of Personnel, Mr. Frank Romero (Plaintiff's Exhibit 4). In this letter, Mr. Romero stated that the position has lost the characteristics which warranted its inclusion in the non-competitive service. This was and continues to be the official mode of operating such a change.

5. Subsequently, plaintiff continued his employment at the Department of Agriculture as Director of the Arecibo Agricultural Region. At all times he had the status of a regular employee in the competitive service, although the positions held were of trust and confidence (executive), the non-competitive type.

6. An employee may pass from one system of employment to the other.[2] A position may also change in nature. The Secretary of Agriculture definitely had the power to change the functions of a position[3] which had already once before been competitive. The Director of Personnel could approve such changes. In the light of the testimony of the former Secretary of the Department of Agriculture of the Commonwealth of Puerto Rico, Luis Rivera Brenes, the criteria for the change was a change in the nature of the position. Once so changed, the plaintiff was invested with all of the incidents of competitive employment and as such could not be dismissed without a hearing.

7. Plaintiff's Exhibit 4 (in the words of defendant Milagros Guzman), constitutes evidence that the request of the Secretary of Agriculture was approved by the Director of Personnel. No other official approval was necessary for this change to go through, especially since plaintiff himself had nothing to do with said change.[4] The ultimate decision, the approval, is therefore made by the Director of Personnel (page 186 of the record). The normal procedure was used for introducing plaintiff to the competitive system (see testimony of codefendant Milagros Guzman at page 193 of the record). Since the files of the Personnel Board are private (page 193 of the record), the plaintiff was led by official communications (Plaintiff's Exhibit 4) to believe he enjoyed a secure competitive position.

8. Plaintiff at no time received official notice of a change in his classification from the Personnel Board; rather, he received an unofficial letter dated April 18, 1973 from the Auxiliary Secretary of Administration of the Department of Agriculture, codefendant Luis A. Crespo. This letter did not constitute an official notice from the Personnel Board, and as such was not an official notice of reclassification.

9. Plaintiff's career is one of distinction. He completed his college education in three years rather than four. He is a father of five children and a member of various civic and professional organizations. Throughout his years as public servant he has received numerous promotions, merit awards and acknowledgements of proficiency in the performance of his duties. His work record of twenty-nine years of public service does not reflect one single disciplinary action or reprimand and the testimony offered in Court does not bear any light on any unfavorable or disagreeable conduct on his part. One witness testified there was no knowledge of any unfavorable circumstances which might have induced his discharge.

10. Plaintiff is a member of the New Progressive Party that was in office from 1969 to 1972. This fact was well known to

---

2. In this respect the Court pays special attention to the testimony of codefendant Milagros Guzman at pages 187–189 of the official court record. See also testimony at pages 194–195 of the record.

3. See record at pages 195–196. See also testimony of codefendant Luis A. Crespo at page 95.

4. See record at page 189. In this connection the testimony of Milagros Guzman at page 186 of the record illuminating: "Yes, the ultimate decision the approval for the preliminary inclusion of a position in the noncompetitive system is made by the Personnel Director."

defendants and the people who worked with him.[5]

11. As a result of the Popular Democratic Party winning the Elections held in the Commonwealth of Puerto Rico on November 7, 1972 and taking the administration of the Government in January, 1973, codefendants Antonio Gonzalez Chapel and Milagros Guzman were appointed Secretary of Agriculture and Director of Personnel, respectively, in substitution of the former administrators, Luis Rivera Brenes and Frank Romero, respectively. The duties and powers remained the same as those of the former administrators.

12. As a result of the change of political administration plaintiff was neglected and harassed in his work, and constructively deprived of his duties without reason prior to his dismissal[6] (see also testimony of codefendant Gonzalez Chapel at page 305 of the record to the effect that he never met with the plaintiff). Plaintiff was originally in charge of an office with a large number of employees, in an "executive type" position as Director of Agricultural Programs III (page 41). After the elections the plaintiff was no longer consulted, he no longer met with the Secretary of Agriculture, and even the mail was routed to another person. Pressure was brought upon him to resign.[7,8]

13. On January 30, 1973, codefendant Luis A. Crespo requested from codefendant Milagros Guzman an opinion about the legality of the employment status of a group of employees, among which was plaintiff. Meanwhile, plaintiff was unaware that his job was in jeopardy.

14. Prior to the interchange of correspondence between codefendants Luis A. Crespo and Milagros Guzman, there were several conversations and meetings between said codefendants relative to the contents of said letters.[9]

---

5. See page 29 of the record; also page 20.

6. See page 51 et seq. of the record at which plaintiff testified: "I told him I was very hurt because he had been having conversations with persons who were from my office and under my direction about matters that were prejudicial to me and affected me and . . . ", also at page 28 et seq. It is clear from the record that plaintiff was the victim of hostility . . and at least one phone call from Mr. Julio Biaggi, Assistant to the Secretary in charge of regional operations, so reflects. He expressed himself to plaintiff in terms quoted by plaintiff at page 29 of the record as follows: "And he told me I have to resign my position. I asked him why and he told me that the Secretary needed a man in my position that had to be loyal to the new administration and to the Popular Party". Equally, there is evidence that plaintiff was deprived of his functions prior to his termination. At page 30 of the record he expresses that "Lately correspondence had been sent to the Sub-Director Felix Cabrera, not to the Director". In the plaintiff's own words, "Yes, I have to be kicked out of my office, my position. I have to be kicked out of my position because I am not a popular". (referring to a political party) (our brackets).

7. This is evident from the testimony of Felix Cabrera, who incidentally succeeded plaintiff as Regional Director for the Arecibo Agricultural Region. Mr. Cabrera expressed he was requested to and delivered a message as follows: "The message indicated in my personal position to mediate with fellow worker Faustino Rivera Lopez and a letter that had been sent to him by the department in which and among other things it was stipulated the office of Personnel's opinion in relation to the position he held *to ask from the fellow companion and friend Faustino to present his resignation by writing and avoid any other action taken by the Secretary*." (emphasis added) Page 342 of the record.

8. Witness Felix Cabrera testified that: "Well the situation in the Regional Office in Arecibo was a situation which we will call not favorable to Faustino Rivera Lopez as Regional Director." (see page 344 of the record).

9. The Court takes special note that in spite of codefendant Milagros Guzman's testimony to the effect that she did not see plaintiff's file until one week before trial (pages 168 and 185), she expressed that late in January, 1973 (page 178), she was consulted by the Department of Agriculture concerning the legality of the employment of the plaintiff. On a verbal opinion of the Secretary of Justice, codefendant Guzman rendered an opinion regarding the position of the plaintiff, whose particular file had not been examined (page 185). Although information regarding plaintiff's position had been requested by codefendant Crespo, codefendant Guzman was at no time, according to her testimony, in contact with plaintiff's file until one

15. Plaintiff was not afforded an opportunity to be heard on the abrupt change of status in his civil service career from competitive to non-competitive service, nor on his termination of employment after twenty-nine years of service. Likewise, plaintiff was not advised that defendants were contemplating divesting him of his rights as an employee in the competitive service or that they were contemplating terminating his public career, or depriving him of his property interest in his employment and pension.

16. The testimony of Felix Cabrera indicates that plaintiff was obliged to work in an atmosphere of hostility and was confronted with "a warning"[10] of an official nature. Additionally, a conversation overheard by plaintiff between Rafael Garces and Ruben Gonzalez Chapel is indicative of the then existing atmosphere to eliminate him from his position. Furthermore, plaintiff was told by Mr. Felix Cabrera that the Sub-secretary Dr. Manuel Mejias Mattei[11] wished him to "ask from the fellow companion and friend Faustino to present his resignation by writing *to avoid any other action taken by the Secretary*". (emphasis ours). Plaintiff did not act unreasonably in interpreting this clearly as a warning in the scope of the possible actions that the Secretary could take.

## CONCLUSIONS OF LAW

■ This Court has jurisdiction to entertain the present action under the Civil Rights Act. In civil rights actions predicated under Section 1983 of Title 42, United States Code,[12] the elements necessary to establish a claim are that the conduct complained of was engaged in under color of state law and that such conduct subjected plaintiff to deprivation of rights, privileges or immunities guaranteed by the Constitution of the United States. *Adickes v. Kress*, 398 U.S. 144, 150, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); see also *El Mundo, Inc. v. Puerto Rico Newspaper Guild, Local 225*, 346 F.Supp. 106 (DC PR 1972); *Gonzalez v. Gonzalez*, 385 F.Supp. 1226 (DC PR 1974); *Oppenheimer Mendez v. Acevedo*, 388 F.Supp. 326 (DC PR 1974), affd. (1 Cir. 1975) 512 F.2d 1373.

■ The evidence before this Court establishes that all three defendants had direct participation in altering plaintiff's status as a career government employee, which event has enabled codefendant Antonio Gonzalez Chapel to directly terminate him

week before the trial (page 168); as such, at the time of his dismissal, she allegedly:

a) did not review or examine plaintiff's personnel file.

b) did not know that plaintiff had twenty-nine years of public service and was due for retirement in one year's time.

c) did not know about plaintiff's excellent record as a public servant.

In fact, the meetings to which she makes reference to (page 179) with the Secretary of Justice to discuss "the cases" were held without any concrete knowledge of the file or history of the plaintiff.

Although codefendant Milagros Guzman testified she did not come in contact with the file of the plaintiff until one week before the Court's proceedings, she was able to find that there was no evidence of a change in the plaintiff's position. This is clearly difficult and probably impossible without knowledge of plaintiff's particular file. By letter, codefendant Milagros Guzman replied to codefendant Crespo that plaintiff's competitive status was improperly granted by the former Director of Personnel and that, accordingly, he had remained in the non-competitive service. Mrs. Guzman's opinion was to the effect that the approval made by the former Director of Personnel of the former Secretary of Agriculture's petition with respect to plaintiff's position, was illegal for it was her opinion that at the time of the approval plaintiff was not in the competitive service, but contrariwise, in the non-competitive service and that the change had never been completed.

10. See pages 350 et seq. of the record.

11. See page 64 of the record.

12. Section 1983 of Title 42, United States Code, provides:

"Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party in an action at law, suit in equity, or other proper proceeding for redress."

from his public employment as Director of the Arecibo Agricultural Region. All three acted pursuant to the provisions of the Personnel Act of the Commonwealth of Puerto Rico, Title 3, Laws of Puerto Rico Annotated, Section 641 et seq. It was pursuant to consultation by and between defendants, that it was decided to terminate plaintiff's services. Moreover, codefendants Antonio Gonzalez Chapel and Luis Crespo testified that they terminated plaintiff based on the written opinion from codefendant Milagros Guzman. Milagros Guzman had testified that she issued said opinion in reply to a verbal and then written request from codefendant Secretary of Agriculture and codefendant Crespo. Moreover, she testified that the Secretary of Justice was consulted on March 8, 1973. An officer or employee of a State or Territory or one of the political subdivisions thereof is deemed to be acting under color of law as to those deprivations of rights committed in the fulfillment of the tasks and obligations assigned to him. *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). In the case at bar codefendants Antonio Gonzalez Chapel, Luis Crespo and Milagros Guzman in their official capacities as Secretary and Auxiliary Secretary of Administration of the Department of Agriculture and as Director of Personnel of the Office of Personnel of the Commonwealth of Puerto Rico, respectively, clothed with the authority of their offices and in the fulfillment of their respective tasks, and predicating their actions on the Personnel Act of the Commonwealth of Puerto Rico engaged in conduct under color of law culminating in the alteration of plaintiff's status as a career government employee and in the termination of twenty-nine years in public service.

Plaintiff's complaint alleges that the Secretary of Agriculture, Antonio Gonzalez Chapel, and the Director of Personnel, Milagros Guzman, terminated his employment because of his ideological and political beliefs, which are contrary to those of defendants, in violation of the rights guaranteed to him by the First Amendment to the Constitution of the United States. Likewise, he has charged that the termination of his status as a competitive employee, as granted to him by the action of the former Director of Personnel on November 3, 1972, without notice and an opportunity to be heard, after almost twenty-nine years of public service, violates his constitutional right to due process of law guaranteed by the Fourteenth Amendment to the Constitution of the United States.

As we stated in *Gonzalez v. Gonzalez*, supra, at page 1235:

"While there is no constitutional right to public employment as such, *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), all public employees have a constitutional right to be free from arbitrary discharge and from unreasonably discriminatory practices. *Whitner v. Davis* (9 Cir. 1969), 410 F.2d 24, 30; *Rolfe v. County Board of Education of Lincoln County, Tennessee* (6 Cir. 1968), 391 F.2d 77, 80; *Wolfe v. O'Neill* (D.C. Alaska 1972), 336 F.Supp. 1255; *Davis v. Board of Trustees of Arkansas A & M College* (D.C.Ark.1967), 270 F.Supp. 528, aff. sub nom.; *Board of Trustees of Arkansas A & M College v. Davis* (8 Cir. 1968), 396 F.2d 730, cert. den. 393 U.S. 962, 89 S.Ct. 401, 21 L.Ed.2d 375 (1960). Additionally, a public employee may not be denied public employment because he has exercised his constitutional rights, e. g. freedom of speech and of association. Cf. *Perry v. Sindermann* and cases cited therein, 408 U.S. 593, 597, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). See also *Illinois State Employees Union, Council 34, etc. v. Lewis* (7 Cir. 1972), 473 F.2d 561, cert. den. 410 U.S. 928, 93 S.Ct. 1364, 35 L.Ed.2d 590 (1973); *Gould v. Walker* (D.C.Ill.1973), 356 F.Supp. 421, 425; *Commonwealth of Pennsylvania ex rel. Rafferty v. Philadelphia Psychiatric Center* (D.C.Pa.1973), 356 F.Supp. 500. Accordingly, a public employee of the Commonwealth of Puerto Rico may not be dismissed from public employment solely on the grounds of political affiliation. See *Janda v. State of Illinois* (D.C.Ill.1972), 348 F.Supp. 568. See also Article II, Section 1, Constitution of the Commonwealth

of Puerto Rico, Title 3, Rules and Regulations of the Commonwealth of Puerto Rico, Section 647–221."

See also *Baez Cancel et al. v. Santos Rivera Perez*, 100 D.P.R. 982 (1972).*

"It has also been held that a public employee cannot be deprived of an interest encompassed in the Fourteenth Amendment's protection of liberty or property without procedural due process. Whenever protected interests are implicated, the right to some kind of prior hearing is paramount. *Board of Regents v. Roth*, supra [408 U.S. 564] at 569–570 [92 S.Ct. 2701, 33 L.Ed.2d 548]. See also *Commonwealth of Pennsylvania ex rel. Rafferty v. Philadelphia Psychiatric Center*, supra, at 509." [13]

■ While we are aware of plaintiff's First Amendment challenges to the actions of the defendants, we are of the opinion that his Fourteenth Amendment's procedural due process challenges are dispositive. It is the opinion of this Court that sufficient protected interests are implicated in this cause and that plaintiff has secured a sufficient interest in specific benefits that must be safeguarded by the Fourteenth Amendment procedural protection of property, *Board of Regents v. Roth*, supra; *Perry v. Sindermann*, supra. See also *Gonzalez v. Gonzalez*, supra, at 1236.

■ This Court is of the opinion that the term of plaintiff's appointment, as it appears from the evidence in record, secured an interest in continued public employment, as Director of Agricultural Programs III, which constitutes a property interest sufficient to require the defendants to give him a hearing when they dealt with the matter of a possible change of his status in his civil service career from competitive to non-competitive, as well as when they dealt with the termination of his employment as Director of Agricultural Programs III, with functions as Director of the Arecibo Agricultural Region, all after a career of public service for twenty-nine years.[14]

Plaintiff's legitimate reliance upon the letter of November 3, 1972, from the former Director of Personnel, Frank Romero, gives substance to his claim of a property interest appropriate for a constitutional protection.

■ Furthermore, plaintiff's eligibility, in view of his continuous public service of twenty-nine years, to a merit pension by September, 1974, is a substantial property interest that is entitled to the procedural due process protection before such entitlement is affected in any way. Pursuant to the Commonwealth of Puerto Rico's Retirement System, as amended, Title 3, Laws of Puerto Rico Annotated, Section 761, et seq., plaintiff would have been eligible to a merit pension in September, 1974, commensurate to his monthly salary for life. On said date, plaintiff would have completed thirty years of service in accordance with Act No. 19 of April 26, 1972, granting employees with thirty years of creditable service the option, theretofore inexistent, to retire from service regardless of age. Since plaintiff was terminated in his employment prior to September, 1974, he would not be eligible to receive any annuity payment whatsoever for several years.

■ Likewise, plaintiff has an interest in avoiding damage to his professional reputa-

---

* Spanish version. No English version published.

**13.** In considering the merits of plaintiff's procedural due process arguments, we must first determine whether due process protections apply to the situation at bar. The relevant inquiry is whether plaintiff's interests affected here are within the concepts of "liberty" or "property" protected by the due process clause. *Board of Regents v. Roth*, supra, 408 U.S. at 571, 92 S.Ct. 2701; *Perry v. Sindermann*, supra, 408 U.S. at 599–603, 92 S.Ct. 2694; *Morrisey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1971). Cf. *Marin v. University of Puerto Rico* (Marin II)

(D.C.P.R.1973), 377 F.Supp. 613; *Gonzalez v. Gonzalez*, supra, at 1236. We find the protections are available.

**14.** As a non-probationary public employee plaintiff had a federally protected interest in continued job employment. *Arnett v. Kennedy*, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974). Since plaintiff was not a Federal employee we must look for other sources to define the nature of his property interest. See also *Oppenheimer Mendez v. Acevedo*, supra, at 333.

tion as a capable administrator in the position of Director of Agricultural Programs III. The circumstances of his firing may stigmatize him, when he is about to finish a public service career of almost thirty years.

■ It is the opinion of this Court that plaintiff, before his status as a government employee could be changed and his employment in the position of Director of the Arecibo Agricultural Region, under the factual circumstances of this case, was entitled to "an opportunity to prove the legitimacy of his claim of such entitlement", *Perry v. Sindermann*, supra, 408 U.S. at 603, 92 S.Ct. at 2700. See also *Johnson v. Fraley*, 470 F.2d 179 (4 Cir. 1972). The presence of plaintiff's property interest obligates defendants to grant him a hearing, at his request, where he could be informed of the grounds for his proposed change in status and nonretention in the position and challenge their sufficiency. *Hostrop v. Board of Junior College District No. 515, etc.*, 7 Cir., 471 F.2d 488. The mere existence of such property interest does not, of course, entitle him to his claim over the position and the pension. See *Gonzalez v. Gonzalez*, supra; *Oppenheimer Mendez v. Acevedo*, supra, at 335.

While it must be borne in mind that plaintiff has not always been a career employee in the competitive service of the Government of the Commonwealth of Puerto Rico, it could very well be that he is entitled to be considered as in the competitive service since November 3, 1972.

Pursuant to the Personnel Act, Title 3, Laws of Puerto Rico Annotated, Section 671, "regular officials and employees in the competitive service may be removed only for just cause, and upon the preferment of charges." Section 671(c) further declares that "The Director may remove from office any official or employee in the competitive service, when, *after such employee has been*

*notified and given an opportunity to be heard*, it should be found that his appointment was illegal . . . .".

It should be noted that if plaintiff was in fact a competitive employee at the time of dismissal he was summarily and without prior notice or hearing transferred from a competitive position to a non-competitive one.[15] This action was immediately followed by termination in his employment without any reason therefore.[16]

■ Having the Court determine that under the circumstances of this cause plaintiff is entitled to procedural due process, as we said in *Gonzalez v. Gonzalez*, supra, at page 1238 "it is proper that we determine what procedural protection is due. *Marin v. University of Puerto Rico* (Marin II), supra, at 621. What standards of due process are applicable (what formality and procedural requirements for a hearing—*Boddie v. Connecticut*, 401 U.S. 371, 378, 91 S.Ct. 780, 28 L.Ed.2d 113) depends upon the nature of the interests affected and the circumstances of the deprivation, *Morrisey v. Brewer*, supra, 408 U.S. at 481, 92 S.Ct. 2593; *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); Cf. *Marin v. University of Puerto Rico* (Marin II), supra, or the nature of the subsequent proceedings. *Boddie v. Connecticut*, supra, 401 U.S. at 378, 91 S.Ct. 780. The precise requirements of procedural due process are of necessity flexible and must be tailored to the circumstances of each case or class of cases. *Cafeteria & Restaurant Workers, etc. v. McElroy*, 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961). See also *Commonwealth of Pennsylvania ex rel. Rafferty v. Philadelphia Psychiatric Center*, supra. But it is firmly established that the constitutional requirement of opportunity for some form of hearing before deprivation of a protected interest does not depend upon such a narrow

---

**15.** Employees in non-competitive positions are not entitled to a hearing upon termination unless they are charged with a wrongdoing absent, of course, an illegal motivation. *Arcelay v. Police Superintendent*, 95 D.P.R. 205 (1967). See also *Simmonds v. Government Employees'*

*Service Commission*, 375 F.Supp. 934 (DC VI 1974).

**16.** It is obvious that this was done to prevent plaintiff from resorting to the Personnel Board, which ordinarily does not have jurisdiction over non-competitive status employees.

balancing process, *Board of Regents v. Roth,* supra, note 8, for when a state seeks to terminate a protected interest, it must afford ' "notice and opportunity for hearing appropriate to the nature of the case" before [17] termination becomes effective.' " *Bell v. Burson,* 402 U.S. 535, 542, 91 S.Ct. 1586, 29 L.Ed.2d 90; *Board of Regents v. Roth,* supra, note 7.

In view of our present disposition, we find it unnecessary to pass upon plaintiff's assertions with respect to violations of his First Amendment's rights.

█ As we also said in *Gonzalez v. Gonzalez,* supra, at page 1239, "This Court is mindful of the importance of the administration of the public civil service system in the Commonwealth of Puerto Rico and the need to maintain the public trust in the civil service. Likewise, we are mindful that the legal framework provided in the Personnel Act of the Commonwealth of Puerto Rico represents the most effective guarantee of selective and efficient public service and helps in the materialization of the public policy that contemplates a system of merits as the motivating factor for civil service. Notwithstanding, we are of the opinion that when we are confronted with a career public employee's expectancy of continued employment as in the case at bar, vis-a-vis the exercise of the duties and powers of the Director of Personnel, as she interprets the applicable laws and regulations, this Court is bound to balance the equities involved." We must bear in mind that plaintiff's reclassification as the Director of the Agricultural Region of Arecibo in the competitive service, made on November 3, 1972, was the result of actions carried out by high level government officials, as they understood the law to be.

█ In view of the foregoing, the Court finds that plaintiff's rights to procedural due process secured to him by the Fourteenth Amendment to the Constitution of the United States have been violated by the defendants. Accordingly, it is the opinion of this Court that plaintiff's termination of employment violated his constitutional rights and that, therefore, he is entitled to have the defendants, their agents, employees and those acting in concert with them, reinstate him with all his rights to his position, or to any other substantially equivalent position without a decrease in salary, including back pay as of June 30, 1973 and to have them enjoined and restrained from changing or modifying his status in the service of the Commonwealth of Puerto Rico from decreasing his salary or terminating his employment without compliance with the due process of law. We are of the opinion that this remedy is appropriate in view of the irreparable harm being suffered by plaintiff, the lack of other adequate remedies, the rights asserted by him and the public interest. See *Neftali Garcia Martinez v. Arturo Morales Carrion,* Civil No. 535–74 (DC PR 1975), (Opinion and Order dated August 19, 1975 at page 73); *Oppenheimer Mendez v. Acevedo,* supra, at 337.

As we said before the question of damages was left for further litigation, if necessary. Since plaintiff's complaint prays that he be awarded $50,000 in compensatory damages and $100,000 in punitive damages, we hereby grant plaintiff thirty (30) days to file a motion informing whether he will insist on his claim for compensatory and punitive damages, or whether he accepts that the recovery of his pecuniary loss reasonably compensates him.

█ Plaintiff's complaint also prays that we award him costs and $15,000 in attorney's fees. The disposition of the attorney's fees prayer is governed by the case of *Alyeska Pipeline Service Co. v. The Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975) in which the Supreme Court stated the general rule that attorney's fees are not recoverable in Federal cases in the absence of a statute specifically authorizing such awards, unless two situations are present in the case, to wit: when the litigation produces a common fund for the benefit of others or when the losing

---

17. For some forms of adequate hearing, see e. g. *Hostrop v. Board of Junior College, District*

*No. 515, etc.,* supra, at 494; *Marin v. University of Puerto Rico* (Marin II), supra.

party has acting in bad faith, vexatiously, wantonly or for oppressive reasons, 421 U.S. at 258–259, 95 S.Ct. 1612. See also *Committee on Civil rights, etc. v. Romney, et al.* (1 Cir. 1975), 518 F.2d 71. See also *Neftali Garcia Martinez v. Arturo Morales Carrion,* supra.

 While in the case of *Gonzalez v. Gonzalez,* supra, we granted attorney's fees under a similar set of factual circumstances and record, it is our reconsidered opinion that the exceptional circumstances required by *Alyeska* are not present herein and that, accordingly, plaintiff's prayer for attorney's fees must be denied. It is evident that this litigation does not represent a common fund for the benefit of others; that substantial benefit will not be derived by others. We are also not convinced that defendants acted in an unreasonable or obstinate manner or that they acted in bad faith in defending the injunctive relief requested by plaintiff. See *Neftali Garcia Martinez v. Arturo Morales Carrion,* supra, at page 75.

 We nevertheless believe that plaintiff is entitled to recover his costs of action.

The Clerk of this Court is instructed to enter judgment accordingly.

IT IS SO ORDERED.

