392 F.Supp. 1276 (1975)
UNITED STATES of America, Plaintiff,
v.
HAZELWOOD SCHOOL DISTRICT et al., Defendants.
No. 73C 553 (A).
United States District Court, E. D. Missouri, E. D.
April 11, 1975.
*1277 *1278 Daniel L. Bell, II, Dept. of Justice, Washington, D. C., for plaintiff.
Don O. Russell, St. Louis, Mo., for defendants.

MEMORANDUM OPINION
HARPER, District Judge.
This "pattern and practice" suit was brought by the Attorney General on behalf of the United States, seeking relief from alleged violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and the Fourteenth Amendment. The Court has jurisdiction pursuant to 28 U.S.C. § 1345 and 42 U. S.C. § 2000e-6(b).
Defendants, Hazelwood School District, its superintendent and members of the Hazelwood Board of Education, are charged with maintaining a number of employment practices which have the effect of discriminating against black applicants for employment in faculty and staff positions with the Hazelwood District. The various individual claims of the plaintiff may be summarized as follows: (1) The district has not taken affirmative steps to overcome the discriminatory effects of previously operating a purportedly dual school system; (2) evidence of employment statistics establishes a prima facie case of racial discrimination; (3) defandants utilize recruiting and interview techniques which are discriminatory per se; and (4) during recent school years defendants failed to hire numerous black applicants who were better qualified for vacant teaching positions than were the white applicants ultimately chosen to fill those positions. Plaintiff requests that the Court order imposition of numerical hiring quotas, institution of an affirmative recruitment program aimed at attracting black applicants, development of nondiscriminatory employment criteria, and individual *1279 offers of employment with back pay to black applicants who were refused employment.
A rudimentary description of the location and history of Hazelwood School District is contained in a pre-trial stipulation filed by the parties. The district covers 78 square miles in northernmost St. Louis County. It was formed from thirteen rural school districts between 1949 and 1951 by process of annexation. At that time the district maintained eight schools with an enrollment of 811 and a faculty of 27. For the school year 1954-1955 the same eight schools remained in existence and the ninth grade of a future four-year high school was initiated.
The first realization that black students might be present in the district apparently came in 1954. The minutes of the Hazelwood Board of Education show that the superintendent informed the Board on November 20, 1954, that blacks had rented property in the district, but that he no knowledge as to whether they had children of school age. The Board instructed the superintendent to admit any children of black residents, but "in view of their being so decidedly in the minority * * * to offer payment of tuition to negro pupils to a school of more predominantly negro enrollments." (Plf's Ex. 57).
Plaintiff's Exhibit 55 discloses that by the 1967-68 school year the total enrollment in the Hazelwood District was 17,550, of which 59, or approximately one-third of one percent, were black. For the year 1970-71 there were a total of 24,256 students in the Hazelwood system. Black students during that year numbered 250, or one percent of the total enrollment. During 1972-73 defendant had a black enrollment of 576, which was approximately two percent of the total 25,166 students in attendance.
Hazelwood did not hire its first black teacher until the 1969-70 school year (Hord Dep. 45-46). During the 1970-71 school year the district employed six black teachers out of a staff of 957. In the fall of 1972 defendants' teaching staff numbered 1,107, out of which 13 were black (Plf's Ex. 55). The black teaching staff was increased to 16 by the end of that school year. For the year 1973-74 defendant maintained a full-time professional faculty of 1231, of which 22 were black (Plf's Ex. 55).
J. W. Hord, personnel director for the Hazelwood schools since 1962, stated that he is the only person involved in the recruiting of teachers (Hord Dep. 9). When he first came to the Hazelwood district most of its teachers came from Southeast Missouri State Teachers College (Hord Dep. 11). He stated that at that time there was a "tremendous shortage" of teachers and that the heavy recruiting at Southeast Missouri State occurred because the Hazelwood staff had many contacts at that college. Hord was instructed to try to attract teachers from other colleges and universities in order to obtain a broader distribution of schools. Thereafter, the district recruited at numerous colleges, selected primarily for their availability of candidates and proximity to St. Louis (Hord Dep. 9). The list of schools includes many of those in Missouri as well as a few from Illinois, Arkansas, Kansas and Oklahoma (Defendants' Answer to Plaintiff's Request for Admission No. 46). All of the colleges listed have predominantly white student bodies. During the period in question Missouri had two four-year colleges, Lincoln University and Harris Teachers College, which offered teaching degrees and which had a substantial number of black students (Plf's Ex. 51). Hazelwood district did not do any recruiting at Harris Teachers College. Hord made one visit to Lincoln University in 1963 or 1964, where he inquired as to prospective teacher candidates. He stated that the reaction from the placement director was "not very favorable" because of the teacher shortage which existed at the time (Hord Dep. 8). At the trial Hord testified that while it was necessary to "search constantly" to find teachers in the early *1280 1960's, today the district has 2300 applications on file and has reduced its recruiting efforts (Tr. 38). For the 1971-72 school year Hazelwood had 3,127 applicants competing for 234 teaching vacancies (Tr. 358); the following year there were 2,373 applications filed and only 282 openings.
Employment applications are sent to everyone requesting them (Hord Dep. 12). Candidates are requested to furnish information concerning their activities, experience with youth organizations, education, prior teaching experience, extent of reading and travel, and additional related training. Formerly the application forms contained spaces for nationality, religion and a picture of the applicant. This practice was officially discontinued in 1954 (Kirby Dep. 56-57), although some application forms still contained space for designating the applicant's race until the 1962-63 school year (Defendants' Answer to Plaintiff's Interrogatory No. 12, March 1, 1974). Each fall the district asks all applicants to update their files; any that are not so updated are destroyed (Tr. 35).
When the personnel office is notified of vacancies within the district, they contact applicants to arrange for interviews (Hord Dep. 13). At one time every applicant was notified of each vacant position, but with the large number of applications on file today the district first notifies those applicants who have recently come to the attention of the personnel office or who have otherwise informed the district of their continuing availability (Hord Dep. 14-15). The personnel office checks to see that each applicant has a Missouri certification to teach. In certain fields, such as home economics, certification is required in a particular area of specialization within the applicant's field (Hord Dep. 16, 32-33; Huss Dep. 24). The only other minimum requirement for faculty positions is a health certificate (Defendants' Answer to Plaintiff's Interrogatory No. 6).
The practice at Hazelwood is to invite several applicants at a time to a group meeting with the elementary or secondary coordinator who describes the district to them. The applicants are then sent to one or more schools where vacancies exist. Actual interviews are conducted by the respective school principal or by a department chairman or program coordinator. The only instruction given to persons in charge of hiring is to obtain the "most competent" person available for the position (McDonald Dep. 18). There are no other specific standards for employment (McDonald Dep. 51). In addition to the information supplied on the candidate's application form, the interviewer relies on a number of intangibles such as personality, disposition, appearance, poise, voice, articulation, and ability to deal with people (Hord Dep. 25; Huss Dep. 24). Forms used by the interviewer contain spaces for evaluation of an applicant's personal attributes, including knowledge of teaching responsibilities, knowledge of subject area, personal appearance, voice, confidence, personality, attitude toward profession, etc. The applicant is rated as above average (or superior), average, or below average as to each of these traits. In addition, there is space provided for the interviewer's comments.
The most comprehensive explanation of how a teacher is selected appears in the deposition of Frank Fox, principal of Hazelwood Junior High School. He stated that he discusses vacancies with his assistants and department chairman in order to determine what sort of individual is required with respect to personality, philosophy of education, and how particular teaching situations need to be handled (Fox Dep. 7). They then examine individual applicants in order to discover their background experience and type of activities in which they participated in school. Of particular interest are types of employment, both teaching and non-teaching, and contacts with youth groups such as Boy Scouts and Girl Scouts (Fox Dep. 7). Fox does not *1281 prefer a master's degree over a bachelor's degree and does not necessarily select the person with the most experience, placing more emphasis on the quality of the experience (Fox Dep. 8). Most other Hazelwood administrators likewise discounted the achievement of a master's degree. Persons with student or substitute teaching experience at Hazelwood are given preference if their performance was satisfactory. (Huss Dep. 29).
At the trial plaintiff called as a witness Rufus Young, director of personnel for the St. Louis City Board of Education. Young testified that the St. Louis school system employs a full time recruiter (Tr. 331), but that recruiting is generally limited to those teaching areas in which there is a shortage, such as industrial arts, science and math, special education and foreign languages (Tr. 335). The St. Louis City district tries to obtain the "best possible" teacher, but at the same time maintains a ratio of black teachers of about fifty-one percent (Tr. 332-333). He testified that the district had discussed basing this ratio alternatively on the racial balance of the city's population, the racial balance of the students in attendance in the district or on the present racial makeup of the faculty, but that no specific basis has been chosen. When applications are received by the St. Louis district they are reviewed by both a black and a white supervisor who rank them according to national teacher examination scores and other information available, such as years of teaching experience and highest degree attained (Tr. 347, 349). When the superintendent requisitions for a new teacher the personnel office furnishes several names from those applicants with higher rankings. The superintendent may indicate a preference for a black or white teacher in order to "enhance staff balance" (Tr. 348). Interviewing is conducted by the individual school principals or others chosen by the superintendent. During the interview notice is taken of whether the person being interviewed has certain intangible assets which might cause him to be preferred over another applicant (Tr. 349). Young testified that other than certification, teaching experience, degree held, position applied for, and the other factors mentioned previously, the only objective, non-discriminatory procedure which could be used in selecting teachers would be testing, which is generally forbidden (Tr. 351).
Twenty-five black teachers testified at the trial that they applied unsuccessfully for positions at Hazelwood. In addition, plaintiff produced Hazelwood personnel records containing the applications of thirty-two other teachers who are claimed to be black and who applied for teaching or administrative positions at Hazelwood for 1972-73 and 1973-74, the years for which the district had retained personnel records prior to the trial. Twelve of these thirty-two applicants were subpoenaed and claimed their attendance in court, but were not called to testify at the trial.
Judith Ealy testified that she applied to Hazelwood on August 3, 1973 (Tr. 46). Although there was a vacancy in her field, business education, she did not have a vocational teaching certificate. The personnel director reviewed her transcript but told her that she lacked enough credit hours to obtain her vocational certification (Tr. 49). Miss Ealy had been employed by the St. Louis City school district for 1972-73, and she was re-employed in August of 1973 for the 1973-74 school year (Tr. 52, 54). She applied for a vocational certificate about a month prior to trial, but her application had not been acted upon as of the date of trial (Tr. 56).
Nikki Lenoir applied for a position as English teacher mid-August of 1973 but was not given an interview. She testified that she was not surprised to learn that there were no openings at that time, since school was to start on about September 1st (Tr. 61). She has been working at either the St. Louis City or Kirkwood districts since September of 1973 (Tr. 62).
*1282 Pearlie Boyd graduated in business education in June of 1971. While working for another district she applied for a teaching position at Hazelwood in January or February of 1972 (Tr. 63), but was told that there were no openings at that time of year (Tr. 67). She has a general elementary and secondary Missouri certificate, but does not have a business education certificate (Tr. 64). In June of 1972, she began working as a business instructor for Manpower Business Training and was employed by the Frisco Railroad at the date of trial (Tr. 65).
Alice Moore Roach testified that she applied to Hazelwood on April 30, 1972 (Tr. 75), but had not yet applied for teaching certification at that time (Tr. 78). Mrs. Roach was subsequently employed by the St. Louis City district for the 1972-73 school year and was completing her second year there at the time of trial (Tr. 75).
Atry Cotton testified that he applied to teach special education at Hazelwood in July of 1970 but was not interviewed for a position (Tr. 80, 81). He stated that he didn't know at that time that St. Louis County had a centralized special education district rather than separate ones in each school district, although it was stipulated by plaintiff's counsel that this is the case (Tr. 84). Cotton is now teaching special education in the St. Louis City school district.
Alberta Riggs applied as a librarian or English or Biology teacher with the Hazelwood district on May 17, 1973 (Plaintiff's Ex. 34). Mrs. Riggs initially contacted Francis Huss, coordinator of secondary education, seeking interviews for herself and another black applicant, Mrs. Gerst, who had experience as a reading teacher. Huss informed Mrs. Riggs that he had no vacancy in her field, English, but invited her to come in with Mrs. Gerst to interview for reading teacher (Huss Dep. 41). At the interview Huss was "very much impressed" with Mrs. Gerst, who was subsequently hired at Kirby Junior High School, but noted on Mrs. Riggs' interview form that she was "over critical and opinionated to the extent that she approached rudeness" (Plf's Ex. 34). Huss stated in his deposition that Mrs. Riggs expressed her disapproval of the school curriculum, the class schedule and the policy of requiring teachers to remain on the campus during lunch breaks (Huss Dep. 42-43). In addition, after reviewing her course work Huss determined that Mrs. Riggs was not qualified to teach reading, where the vacancy existed (Huss Dep. 42, 44). One month after she applied to Hazelwood Mrs. Riggs began teaching and taking course work at Southern Illinois University (Tr. 108).
Robert Howell testified that he applied for a position teaching social studies in May of 1971, but he enrolled at Webster College for the fall semester of that year (Tr. 109, 112). He served as a student teacher at Hazelwood for a semester while attending Webster College (Plf's Ex. 21) and reapplied for a permanent position at Hazelwood in March of 1973. Howell stated that he was aware that social studies is one of the most competitive of all teaching fields, and he applied to four other districts in addition to Hazelwood (Tr. 114, 115). He accepted a position with the St. Louis district where he was employed at the time of the trial (Tr. 115).
Melvin Lowe applied for a position teaching physical education on April 26, 1972, but did not receive Missouri certification to teach until October or November of 1972 (Tr. 117, 118). He has been employed by the St. Louis City School district since applying to Hazelwood (Tr. 117).
James Washington applied to Hazelwood on March 6, 1973 (Tr. 121). He testified that his college major was in social studies and that he had a minor in physical education (Tr. 122). He was working as a substitute teacher at two other school districts at the time he applied to Hazelwood (Tr. 122) and continued in that capacity until February of *1283 1974 (Tr. 123). Washington applied to seven or eight other school districts in addition to Hazelwood and stated that he knew there was an overabundance of applicants in the area of social studies (Tr. 124). In February of 1974 he located a permanent position teaching for the University City school district (Tr. 125).
Westelle Florez applied to the Hazelwood district in May or June of 1973 (Tr. 126). In August of 1973 Hazelwood officials telephoned her to see if she was available, but she had already signed a teaching contract with the Ferguson-Florissant district (Tr. 129).
Cullen Cook obtained a master's degree from Central State University in Oklahoma in June, 1972, and taught Junior College in Oklahoma until January, 1973 (Tr. 134). He did not apply to Hazelwood until August 16, 1973. He admitted that almost all teaching positions are filled by then, but stated that he made applications to as many St. Louis area districts as he could find hoping to get a position (Tr. 135). Cook testified in addition that his area, art, was a popular field (Tr. 136). Since September of 1973 he has worked as a substitute teacher at Kirkwood (Tr. 133).
Patricia Fletcher applied for a physical education position with Hazelwood in May of 1973 and was interviewed by the principal of Brown elementary school on June 19, 1973. Mrs. Fletcher testified that her undergraduate grade point average was 3.42 on a 4.0 scale (Tr. 150-151). The Brown position was offered to a white applicant on July 7, 1973. This applicant's grades were comparable to those of Mrs. Fletcher; she was awarded a scholarship in college, and was selected for publication in Who's Who in American Colleges and Universities. She was a graduate of Hazelwood High School and had been offered a position at Hazelwood for the 1970 school year, but turned it down to teach in another district (Plf's Ex. 2, Vol. V, pp. 583-599).
Cynthia Edmond applied for a position as social studies teacher on July 10, 1972, but was told that there were no vacancies in her field (Tr. 156). She renewed her application the following year but was not interviewed. No evidence was introduced concerning her current employment status.
Derek Novel likewise applied for a social studies teaching position. He filed applications on January 31, 1973, and again in March, but on both occasions received letters stating that there were no vacancies in that field (Tr. 159). Novel stated that social studies is "one of the more competitive fields in teaching today" (Tr. 166). The record does not disclose whether he is currently teaching school.
Naomi Cooksey filed an application on June 28, 1973, seeking a teaching position in "music education/Afro-American music" (Plff's Ex. 64), but was not offered an interview. She has been employed by the St. Louis City district since the fall of 1973 (Tr. 162). Plaintiff introduced evidence that Hazelwood hired two new music teachers for the 1973-74 school year (Plff's Ex. 2, Vol. IV p. 40; Vol. VIII p. 336; Defts' Ans. to Int. No. 1(a) of Feb. 4, 1974, and Int. No. 2 of August 17, 1973). One of these, Kenneth Heim, applied on May 20, 1973, and was interviewed by the department chairman on May 23rd, more than a month prior to Cooksey's application. The interviewer gave Heim excellent ratings in every category (Plf's Ex. 2, Vol. IV, p. 45). The other new music teacher, Faye Herman, applied on May 4, 1973, and was interviewed June 1st. She, too, was rated as excellent by her interviewer (Plf's Ex. 2, Vol. VIII, p. 342). The qualifications of both of these applicants based on the application forms were comparable to those of Mrs. Cooksey, and they had been interviewed and were already under consideration before Mrs. Cooksey filed her application.
Beverly Ellis applied for an elementary teaching position on August 4, 1972. *1284 She was interviewed by the principal of Brown Elementary School who rated her personal characteristics as "average" but did not recommend her for employment because her application form showed that she had held five different teaching positions during seven years of employment (Plf's Ex. 12). Miss Ellis was subsequently referred to the principal of Charbonier School, who interviewed her for a third grade position. The applicant who was ultimately offered the latter position had just finished working as a substitute teacher at Charbonier during the previous year (Plf's Ex. 2, Vol. V, pp. 39-40). Miss Ellis was working for the St. Louis City district at the time of her application to Hazelwood, and was still working there at the time of the trial (Tr. 171).
Samuel Downs applied for a position on May 24, 1972, as industrial arts teacher. The personnel director talked with Downs but told him that there would only be an opening if a teacher then on sabbatical leave failed to return (Tr. 177). He was not subsequently contacted by Hazelwood and is now teaching in the University City school district (Tr. 178).
Delores Penton filed an application for a kindergarten or elementary level position on June 21, 1973, but was not interviewed. She did not graduate from college until July and, therefore, did not have her teaching certificate at the time of her application when teachers for the 1973-74 school year were being selected (Tr. 180).
Lonnie Lockett applied for a position as industrial arts teacher at the secondary school level on April 5, 1973 (Plf's Ex. 25). He was interviewed by the department chairman, who stated on the interview form that Lockett was not qualified to teach industrial arts because he had no experience teaching electricity or power mechanics. The interviewer also commented that Lockett was nervous and "somewhat difficult to understand." Plaintiff introduced evidence showing that five industrial arts teachers were hired by Hazelwood for the 1973-74 school year subsequent to Lockett's application. A review of their records discloses that three of these teachers did have the desired background in electronics (Plf's Ex. 2, Vol. VII, p. 395; Vol. IX, pp. 317-19; and Vol. I, p. 155), and that a fourth, although he had no electronics experience, was highly recommended based upon his performance as a student teacher at Hazelwood West Junior High School (Plf's Ex. 2, Vol. VI, p. 444). Mr. Lockett is currently employed in the engineering department of Airtherm Manufacturing Company in St. Louis (Tr. 183).
Sandra Reid filed an application with the Hazelwood district on March 7, 1973. In June she was informed that Brown Elementary School was looking for someone with a background in her field, science (Tr. 187), and she was interviewed for the job. The principal of Brown recommended her for a teaching position but chose someone else to fill the Brown slot (Plf's Ex. 33). The teacher chosen for the Brown position had served as a student teacher and substitute teacher at Hazelwood (Plf's Ex. 2, Vol. VIII, pp. 399-400). On August 16, 1973, the principal of Brown called Mrs. Reid to offer her a second or fifth grade position, but she had already signed a contract with the Berkeley School District (Tr. 188. 192).
Jerome Trotter testified that he applied for an elementary or secondary physical education teaching position in Hazelwood during the summer of 1970 (Tr. 195). He was interviewed by a physical education department administrator and by the principal of Elm elementary school, but was not offered a position (Tr. 197-198). Plaintiff introduced into evidence the records of a number of physical education teachers hired by Hazelwood between January, 1971, and the fall of 1973, but not for 1970. The deposition of Hazelwood's personnel director, J. W. Hord, introduced into evidence by plaintiff (Tr. 15), discloses that the reason Trotter *1285 was not hired was because of a very adverse recommendation from his previous employer (Hord Dep. 41). Trotter obtained a position with the St. Louis district that year and is now with the Normandy school district (Tr. 196).
Geneice Kincaid filed an application for physical education teacher in July of 1971 (Tr. 201). She received an interview with someone at the administration building who told her he thought there was a vacancy at one of the elementary schools. However, the official called the school principal and was told that the principal already had someone in mind for the position (Tr. 202). Miss Kincaid filed a second application on June 7, 1972, but was informed by mail on June 9th that there were no vacancies that year (Plf's Ex. 24). At the time she testified Miss Kincaid was employed with the St. Louis City Board of Education (Tr. 205).
Vina Jones filed an application on April 9, 1973, seeking a position as business teacher with the Hazelwood district (Plf's Ex. 23). She testified that she also applied in April of 1972 just before graduating from college (Tr. 207). Her application does not reflect whether she held a vocational certificate. Only two business teachers were hired for the 1973-74 school year. One had four years prior teaching experience and the other had secretarial business experience and had been rated as an outstanding student teacher with the Hazelwood district (Plf's Ex. 2, Vol. VII, pp. 203, 204; Vol. X, pp. 432, 435-436). Vina Jones is currently teaching in the St. Louis city school district (Tr. 208).
Willie Palmer applied to the Hazelwood district on May 3, 1972, for a position as reading specialist, administrator or science teacher (Plf's Ex. 31). He was not certified as a science teacher (Tr. 213) and did not have a Master's degree as required for an administrative position in Missouri (Tr. 214). He has been teaching reading at University City High School since 1970 (Tr. 213, 215). Mr. Palmer's last pay level listed on his application, $11,200.00 (Plf's Ex. 31), was apparently about $2,000.00 per year greater than the Hazelwood district could offer for the position he sought.
Charlene Catlin applied for a home economics position at Hazelwood on July 8, 1972 (Plf's Ex. 63). She was interviewed for vacancies at three schools, including Hazelwood West Junior High School, but was not offered a position (Tr. 219-220). Mrs. Catlin was highly rated by her interviewer, but notations on her application and interview forms indicate that she was not qualified because although she held a general home economics certificate, she did not have the vocational certificate which is required of all home economics teachers in the Hazelwood district (Plf's Ex. 63, Hord Dep. 32-33, Huss Dep. 24). She had been teaching in the St. Louis City district since the fall of 1972 (Tr. 218).
Turning to the Hazelwood personnel records containing the applications of thirty-two other teachers (who did not testify) for positions at Hazelwood for 1972-73 and 1973-74 which were offered by the plaintiff, the record discloses that two of the applicants, Barbara Houston (Kirby) and Carol Jackson, were among the teachers hired by Hazelwood in those years (Plf's Exs. 22 and 72; 66). Only two of the other applicants were actually interviewed for a position.
The records offered in evidence disclose that Gerald Trotter (who was subpoenaed, claimed his witness fees for being present in court, but did not testify) applied for a physical education, health or psychology position for grades 4 to 6 on March 30, 1972 (Plf's Ex. 44). He was interviewed for a position on May 19th and on June 15th was notified that the position had been filled. Trotter's application form shows three years' teaching experience at three different grade schools. His personal form does not contain any interview form. Plaintiff introduced evidence concerning eleven persons hired by the Hazelwood district as physical education instructors for 1972 and 1973. One of these was *1286 hired on May 12, 1972, prior to Trotter's interview (Plf's Ex. 2, Vol. IX, p. 110) and three were hired in 1973 (Plf's Ex. 2, Vol. VI, p. 214; Vol. IX, p. 250; and Vol. X, p. 372). Of the physical education teachers hired during 1972, several had held high school coaching positions in addition to their regular teaching experience (Plf's Ex. 2, Vol. II, p. 252; Vol. VIII, p. 440; and Vol. X, p. 175). Others were rated "first choice of all applicants" on the basis of their interviews with the principal of the school for which they were chosen. (Plf's Ex. 2, Vol. I, p. 102; Vol. III, p. 337; Vol. VII, p. 431).
Timotheus Carson also appeared in court and claimed witness fees but did not testify. The record shows that he applied on April 6, 1972, for a secondary English, French and German teaching position with Hazelwood (Plf's Ex. 4). He was given an interview the following day with the department chairman, who noted that Carson was interested in a phase elective program. Based upon his application Carson appears to be well qualified, but he stated that he expected to receive "no less than" his current salary of $11,500.00.
The twenty-eight other applicants for 1972 and 1973, whose records were offered by plaintiff, were not interviewed. Ten of the twenty-eight were subpoenaed for trial and received witness fees but did not testify. Out of the twenty-eight there were thirteen elementary teachers with no area of specialization, three social studies teachers, four math and science teachers, three physical education teachers, one band teacher, one home economics teacher, one counselor, one special education teacher and one Spanish teacher. Nine of these had no Missouri certification at the time they applied (Plf's Exs. 13, 28, 29, 36, 37, 41, 42, 46 and 47), and another applicant lacked certification in her area of specialization (Plf's Ex. 10). Four others did not fill out an application with the Hazelwood district until the middle or latter part of August (Plf's Exs. 3, 32, 43 and 65), which was after all teachers for the coming school year had been hired.
Prior to the Brown I decision (Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873), handed down by the U. S. Supreme Court in 1954, Missouri, as well as other states, required that schools be segregated. In November of that year the Hazelwood Board of Education instructed the superintendent to admit any black children found residing in the district, but "in view" of the fact that they would be "so decidely in the minority", to offer to pay their tuition to a district having a predominantly black enrollment. Plaintiff relying on Bradley v. School Board, 382 U.S. 103, 86 S.Ct. 224, 15 L.Ed.2d 187 (1965) and Rogers v. Paul, 382 U. S. 198, 86 S.Ct. 358, 15 L.Ed.2d 265 (1965), contends that these facts standing alone demonstrate the operation of a dual school system in Hazelwood, and that the failure to hire any black faculty members prior to 1969 shows a lack of affirmative action to overcome previous discrimination.
Plaintiff's evidence falls far short of establishing that a dual school system ever existed in Hazelwood. The district was not formed until a few years prior to the Brown decision, and there were no black students enrolled in the Hazelwood system during the period of state-mandated segregation in Missouri, since it was not until the meeting of the Board of Education on November 20, 1954, that school officials were even informed that any black residents had moved into the district. The policy adopted by the Board at that meeting was not a policy of mandatory transfer and would in any case have had a de minimus effect, given the small size of the district at that time and the small number of black students who might have been involved.
Nor is there any evidence of racial assignment of either students or faculty during any of the years for which plaintiff introduced evidence. *1287 During the 1970-71 school year blacks were enrolled in 20 out of 22 of the schools in the district (Plf's Ex. 55), and the largest number of blacks in any one school in that year was an enrollment of 41 blacks out of a total of 862 students. As late as 1973, when 22 black teachers were hired, only one black teacher was assigned to the school with the highest number of black students (Plf's Ex. 55). The Fourteenth Amendment does not require maintenance of precise racial balance of faculty. United States v. Montgomery County Board of Education, 395 U.S. 225, 236, 89 S.Ct. 1670, 23 L.Ed.2d 263 (1969).
The 1970 census shows that there are 19,425 elementary and secondary teachers in St. Louis City and County, of which 2,997, or 15.4% are black (Plf's Ex. 75). Plaintiff seeks thereby to establish a prima facie case of racial discrimination by pointing to the comparatively small ratio of black teachers (approximately 2% in 1973) employed by the Hazelwood district, and requests the Court to impose a mandatory hiring quota based upon the average ratio of black teachers employed in all of the school districts of St. Louis City and County combined.
While plaintiff in this case argues in its brief that the black teacher ratio of St. Louis City and County combined should control, plaintiff's expert witness testified at the trial that the St. Louis City school district attempts to maintain a teacher ratio based upon the race of students or population within the City district itself, rather than the makeup of the entire St. Louis Metropolitan area. Consistent with the racial mix of this area's population there is a much higher ratio of black teachers in St. Louis City than in the County. The black population in the city is 254,268 out of a total population of 622,234 (Plf's Ex. 53 [1970], Tables 81, 125), or approximately 40%. Of the 19,425 teachers in St. Louis City and County, 5,238 are employed in the city district, and 2,182 of these, or about 40%, are black (Plf's Ex. 53 [1970], Tables 122, 127).
The 45,579 black persons living in St. Louis County are less than 5% of the total population of around one million (Plf's Ex. 53, Tables 81, 125). Black teachers in St. Louis County, which includes the Hazelwood district, number 815 out of 14,187 total teachers (Plf's Ex. 53 [1970], Tables 122, 127), or approximately 5.73%. Thus, the figure of 15% black teachers, against which plaintiff seeks to compare the Hazelwood district's employment record, is distorted by the inclusion of data from the St. Louis City district, which contains a much higher ratio of black teachers and a much larger black population.
While a great disparity in the ratio of black to white faculty as compared to the ratio of black to white students within a particular school district may provide evidence of racial discrimination, Jackson v. Wheatley School District No. 28 of St. Francis County, Arkansas, 430 F.2d 1359, 1363 (CA8 1970); Armstead v. Starkville Municipal Separate School District, 325 F. Supp. 560, 569 (N.D.Miss.1971), aff'd 461 F.2d 276 (CA5 1972), this Court has found no authority to suggest that a school district may be guilty of violating Title VII for failing to maintain a ratio of black teachers based upon the racial makeup of all teachers in the geographic area from which that district might conceivably draw its employees.
The number of black teachers employed by the Hazelwood district is undeniably meager. Nonetheless, it has kept pace with the small but steadily increasing black enrollment in the district. For the 1970-71 school year the six black teachers hired by the Hazelwood district comprised less than one percent of its total faculty. However, the number of black students enrolled during that period was likewise only one percent of the total district attendance. In 1973 the ratio of black teachers increased to 2%, consistent with a black enrollment in that year of 576 out of 25,166 total students. These figures do not establish the existence of statistical *1288 discrimination within the Hazelwood district.
In determining the validity of Hazelwood's employment procedures, this Court is not without guidance. The unique problems which arise in the area of teacher employment have been thoroughly explored in previous decisions of this circuit. The case of Smith v. Board of Education of Morrilton Sch. Dis. No. 32, 365 F.2d 770 (CA 8 1966) involved the closing of a formerly all black high school and dismissal of its black teaching staff following forced integration of the defendant school district. None of the dismissed teachers was considered by district officials to be qualified to teach in the newly integrated high school. This decision was based upon numerous subjective factors in addition to the teachers' "paper qualifications" such as academic degrees and experience. In regard to the defendant's reliance on subjective employment factors, the Court in Smith stated at pages 781-782:
"We recognize that teaching is an art and that excellence does not depend upon knowledge, experience, formal training and classroom conduct alone. Fitness for teaching rests upon a broad range of factors and encompasses numerous personality and character traits. * * * In addition, the particular needs of a school district may at times genuinely require that weight indeed be given to an applicant's ability to teach more than one subject, or, in addition to teaching, to supervise extracurricular activity. Nothing contained in this opinion is intended to be restrictive of a school board's freedom to make full inquiry and to give due consideration to an applicant's qualifications and the district's needs in filling vacancies so long as the board does not act unreasonably, arbitrarily, capriciously, or unlawfully. * * * However, in this day race per se is an impermissible criterion for judging either an applicant's qualifications or the district's needs."
The Court held in Smith that the dismissed teachers had been discriminated against because in addition to considering the valid factors referred to above the defendant placed major emphasis on purely racial factors such as the inability of black teachers to "understand many of the problems of white pupils" due to their different environment, and the "differing speech patterns" possessed by black teachers. 365 F.2d at page 781.
In the recent case of Moore v. Board of Ed. of Chidester Sch. Dist. No. 59, Ark., 448 F.2d 709 (CA 8 1971), the Eighth Circuit established general guidelines to be applied in determining the validity of a school district's employment procedures. At page 713 of that opinion the Court stated:
"We concede that there is some ambiguity in the decisions of this Court as to whether the standards must be objective. * * * To reconcile these decisions, we now make clear that a board of education is obligated to use objective nondiscriminatory standards in the employment, assignment and dismissal of teachers. A board may also consider established and previously announced nondiscriminatory subjective factors in making such decisions."
Although Smith and Moore dealt only with the dismissal of black teachers, the broad principles announced in those decisions are clearly intended to be applicable to selection of incoming teachers as well. When considered in light of the above decisions, this Court does not find fault of any constitutional magnitude with respect to the employment procedures currently in use in Hazelwood.
The first step in Hazelwood's employment process is the review of each application by the personnel office to insure that the applicant has a health certificate and Missouri certification to *1289 teach. Teaching certification has previously been held to be a valid nondiscriminatory standard, Moore v. Board of Ed. of Chidester Sch. Dist. No. 59, Ark. supra; Jackson v. Wheatley Sch. Dist. No. 28 of St. Francis Co., Ark., 430 F.2d 1359 (CA 8 1970), and the requirement of a health certificate is a similarly objective standard.
As in other districts of similar size, most of Hazelwood's interviewing is left to the principal of each individual school. It appears that his recommendation is approved by the superintendent in virtually ever case. Because of the fact that the district is so large, school officials should be encouraged to develop and publish standard guidelines for employment of teachers in order to minimize the possibility that an individual interviewer might abuse the broad discretion which he currently possesses. Nonetheless, although the only instruction now given to those responsible for conducting interviews is to obtain the "most competent" teacher or administrator, substantial uniformity is achieved throughout the district by the use of standard application and interview forms which set forth the factors which are taken into account in making the hiring decision. Many of these factors, such as prior experience, prior student teaching or substitute teaching at Hazelwood, knowledge of subject area and knowledge of teaching skills, are clearly objective. Others, such as knowledge of children, appear on their face to be subjective, but are based upon objective information supplied by the applicant, such as participation in youth groups. None of the standards used could be said to involve racial distinctions, as was the case in Smith v. Board of Education of Morrilton Sch. Dist. No. 32, supra. Subjective factors such as personal appearance, confidence, disposition, philosophy of education and handling of particular discipline problems are all common, established considerations in the employment of teachers, and therefore do not violate the test set forth in Moore v. Board of Ed. of Chidester Sch. Dist. No. 59, Ark., supra.
The only substantial difference between the hiring procedures used at Hazelwood and those suggested by plaintiff's expert, Mr. Young, is that the St. Louis City district superintendent may specifically request that a black or white teacher be selected for a particular position in order to maintain the desired racial balance.
The Court now turns to the evidence concerning black applicants who were not offered teaching positions with the Hazelwood district. The burden of proving that defendants' failure to hire these applicants constituted a pattern of intentional employment discrimination is on the government. United States v. Jacksonville Terminal Company, 451 F.2d 418, 442-443 (CA 5 1971), cert. den. 406 U.S. 906, 92 S.Ct. 1607, 31 L.Ed.2d 815 (1972). The Court has not found any basis in the record before it for concluding that defendants acted in a discriminatory fashion in failing to hire these fifty-five black applicants during 1972 and 1973.
Several of the twenty-five applicants who testified at the trial that they were not interviewed, including Judith Ealy, Pearlie Boyd, Willie Palmer and Charlene Catlin, did not meet Hazelwood's standard requirements for positions for which they applied. At least two, Nikki Lenoir and Cullen Cook, although they may have been qualified did not apply until a week or two prior to the date on which school was to commence. Both Lenoir and Cook frankly admitted that they were not surprised to learn that there were no vacancies remaining at that time. Several other witnesses testified that they were actually called by Hazelwood with regard to employment, but had already accepted positions with other districts.
A number of witnesses who applied as teachers in areas for which there were no vacancies stated that they were aware of the great competition for teaching positions. This competition is *1290 particularly intense in certain areas of teaching. For example, Derek Novel testified that his field, social studies, "is one of the more competitive fields in teaching today."
Atry Cotton applied for a position as special education teacher at Hazelwood. Although plaintiff claims that Hazelwood's failure to hire him was discriminatory, plaintiff stipulated that the Hazelwood district does not even have a special education department, since St. Louis County has centralized such services at a separate location.
With regard to those black teachers who testified that they were interviewed but not offered a position, a review of the qualifications of those teachers ultimately selected for each position shows that in every case where a comparison is possible the district's choice is readily explainable on valid, nondiscriminatory grounds.
The teachers chosen to fill the vacancies for which Beverly Ellis and Sandra Reid interviewed had served as student or substitute teachers with the Hazelwood district, a qualification which frequently results in one candidate being chosen over the large number of other applicants for a particular position. Furthermore, Mrs. Reid was offered a job prior to the commencement of the 1973-74 school year but had previously accepted employment with another district.
Patricia Fletcher testified to an impressive scholastic record. However, the academic credentials of the applicant chosen for the position for which Fletcher was interviewed were equally impressive. She was a former graduate of Hazelwood High School, and the district had tried previously to hire her.
Charlene Catlin appears to have been an excellent teacher candidate, but she did not have a vocational home economics certificate, a prerequisite for all home economics teachers at Hazelwood.
Lonnie Lockett was told that the district wanted industrial arts teachers who had experience with electricity or power mechanics. The evidence shows that this standard was not applied in a discriminatory fashion, since most of the industrial arts teachers hired in the year Lockett was interviewed had the desired experience in electronics. Of the other two industrial arts teachers hired, one, although lacking an electronics background, was recommended based on an outstanding student-teaching performance at Hazelwood.
Alberta Riggs was not recommended for a teaching position partially because of her criticism of Hazelwood's policies. In addition, a review of her transcript showed that she was not qualified for the reading position for which she was interviewed, although the black teacher who accompanied Mrs. Riggs to her interview was qualified and was subsequently hired by the district.
The Court has thoroughly reviewed the records of the remaining twenty-eight applicants who did not testify, and has found no evidence of discriminatory treatment of these applicants either. It appears that the problem actually underlying most of the black teachers who have applied to Hazelwood during the past two years is the same one which plagues every applicant in the teaching profession todayan overabundance of qualified teachers. During recent years the Hazelwood school district has had to turn away applicants at the rate of two to three thousand per year. These fifty-five black teachers who applied in 1972 and 1973 in reality are but a very small portion of the total number who applied unsuccessfully for positions in those years.
Since plaintiff has failed to prove the existence of any pattern or practice of racial discrimination in the employment of teachers at the Hazelwood school district, imposition of an affirmative recruitment program is not appropriate. Furthermore, as pointed out above, the numerical hiring quotas which plaintiff seeks to impose are contrived from census data encompassing the entire St. Louis Metropolitan area and bear no relation whatsoever to the *1291 racial characteristics of the Hazelwood district.
This memorandum opinion is adopted by the Court as its findings of fact and conclusions of law, and the clerk is directed to prepare and enter the proper order of judgment in favor of the defendants.

JUDGMENT
In accordance with the Memorandum and Order of the Court this day filed which is incorporated in and made a part of this judgment;
It is hereby ordered and adjudged that judgment be and is hereby entered in favor of defendants and against plaintiff.