Maudie L. THOMPSON, Appellant,

v.

The SCHOOL DISTRICT OF OMAHA, IN the COUNTY OF DOUGLAS, IN the STATE OF NEBRASKA, a political subdivision of the State of Nebraska; Dorothy Beavers, Helen Frank, Leo A. Hoffman, Charles A. Peters, Timothy Rouse, John C. Barnhart, A. L. Bergman, Paul Kennedy, Members of the Board of Education of the School District of Omaha; Owen A. Knutzen, The Superintendent of Schools, The School District of Omaha, Appellees.

No. 79–1593.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 12, 1980.

Decided May 21, 1980.

Vard R. Johnson, Legal Aid Society, Omaha, Neb., for appellant; Robert V. Broom, Omaha, Neb., on brief.

Alex M. Clarke, Baird, Holm, McEachen, Pedersen, Hamann & Haggart, Omaha, Neb., for appellees.

Before GIBSON, Senior Circuit Judge, and HEANEY and STEPHENSON, Circuit Judges.

HEANEY, Circuit Judge.

Maudie Thompson, a black schoolteacher, brought an action pursuant to 42 U.S.C. § 1983 challenging the termination of her employment as a tenured teacher in the Omaha public schools. She contends that her dismissal was motivated by racial considerations rather than the board's stated ground of incompetency, thereby denying her substantive due process and equal protection of the law. The trial court held that Thompson was required to prove an intent to discriminate, and found as trier of fact that the evidence "overwhelmingly demonstrate[d] that her dismissal was due to her incompetency," and that race was not a "motivating factor" in the decision to terminate her employment. We affirm the judgment of the district court.

Thompson, who is sixty-one years old, holds a bachelor's degree in mathematics and two master's degrees. Prior to joining the Omaha School District in 1967, she taught in a number of high schools, a junior college and Florida Normal College. In 1973, Thompson received statutory tenure by virtue of being reemployed for a sixth consecutive school year. Neb.Rev.Stat. § 79–1257. Between 1967 and June of 1975, Thompson taught mathematics at Horace Mann Junior High, a predominantly black

school,[1] and received generally favorable evaluations. In June of 1975, this Court found the Omaha school system to be segregated as a matter of law and ordered the immediate transfer of teachers within the system to begin integrating the faculty. *United States v. School Dist. of Omaha*, 521 F.2d 530 (8th Cir.), *cert. denied*, 423 U.S. 946, 96 S.Ct. 361, 46 L.Ed.2d 280 (1975). Thompson was one of the teachers selected to be transferred, and in the fall of 1975, she began teaching mathematics at Morton Junior High, a predominantly white school.[2] During the 1975–1976 school year, students and parents complained about Thompson's teaching and she was unfavorably evaluated by administrators who observed her classroom. In June, 1976, Thompson received notice that the superintendent intended to recommend termination of her employment to the school board. Following an extensive hearing, the school board voted to terminate Thompson's employment.

■ Thompson contends that the district court erred in failing to hold that she had established a prima facie case of racial discrimination. We agree with that contention. Normally, the burden of proving intent to discriminate rests with the plaintiff in a section 1983 action, *Marshall v. Kirkland*, 602 F.2d 1282, 1288 (8th Cir. 1979); *Clark v. Mann*, 562 F.2d 1104, 1112 (8th Cir. 1977); *Williams v. Anderson*, 562 F.2d 1081, 1086 (8th Cir. 1977), and intent will have to be found by "a sensitive inquiry into such circumstantial and direct evidence of intent as may be available." *Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 266, 97 S.Ct. 555, 564, 50 L.Ed.2d 450 (1977). In some instances, however, evidence of discriminatory intent may be sufficient to establish a prima facie case of racial discrimination, triggering a rebuttable presumption in favor of individual relief. *Williams v. Anderson, supra* at 1087. The defendant must then show by clear and convincing proof that it did not unlawfully discriminate against the plaintiff. *United States v. Cotton Plant School*

*Dist. No. 1*, 479 F.2d 671, 672 (8th Cir. 1973); *Moore v. Board of Education*, 448 F.2d 709, 711 (8th Cir. 1971).

We have applied this concept in cases of teacher dismissals resulting from reductions in staff upon the court-ordered or voluntary closings of segregated schools. *United States v. Cotton Plant School Dist. No. 1, supra; Thomas v. Board of Education*, 457 F.2d 1268 (8th Cir. 1972); *Moore v. Board of Education, supra*. In those cases, we have found a prima facie case exists

> if the district has a long history of segregation, if there is a decrease in the number of black teachers, if the proportion of the black faculty to white faculty is significantly less than the proportion of black to white students, and if only black teachers are dismissed.

*Moore v. Board of Education, supra* at 711. We found a prima facie case was established in *Williams v. Anderson, supra* at 1088–1091, even though we did not explicitly find that all four of *Moore's* elements were met, because the plaintiffs' evidence showed that systemwide discrimination against black faculty existed both before and after unitization of the schools.

■ The school district argues that Thompson did not make out a prima facie case because she failed to either meet the four elements of *Moore* or to show the continuing discrimination of *Williams v. Anderson*. While we agree that the facts before us do not mirror *Moore* or *Williams v. Anderson*, we nevertheless feel that Thompson has established a prima facie case. There is no "inflexible formulation" of what constitutes a prima facie case; it varies with respect to differing factual situations. *Williams v. Anderson, supra* at 1088; *see International Bhd. of Teamsters v. United States*, 431 U.S. 324, 358, 97 S.Ct. 1843, 1866, 52 L.Ed.2d 396 (1977). The rebuttable presumptions created by the prima facie case "reflect judicial evaluations of probabilities and * * * conform with a party's superior access to the proof." *Id.* at

---

1. Horace Mann Junior High was approximately 97% black at this time.

2. Morton Junior High was approximately 97% white during the 1975–1976 school year.

359 n.45, 97 S.Ct. at 1867 n.45; *Williams v. Anderson, supra* at 1088. We feel that Thompson's proof established a prima facie case of racial discrimination. We found in *United States v. School District of Omaha, supra* at 537–538, that the Omaha schools intentionally created and maintained segregation in five areas, including faculty assignment. We ordered the immediate transfer of teachers to begin integrating the faculty. Maudie Thompson was one of those teachers so selected, and she established that although she had received favorable evaluations at the black school, she was terminated after only one year of teaching in the white school. Thompson does not argue that all black teachers so transferred were the victims of racial discrimination, and she offers no statistics to indicate that a disproportionately large number of black teachers were fired. We do not feel, however, that these facts are dispositive of the question of whether she has established a prima facie case. We feel that by showing that she was deemed an adequate teacher at a black school for eight years, then suddenly terminated after transfer pursuant to a desegregation order to a white school, she has offered sufficient evidence to establish a probability that she was the object of racial discrimination.

She has not won her case by this proof, but has simply transferred the burden of coming forward with evidence to the school district. We feel that transfer is appropriate, particularly in light of the school district's superior access to proof of its intent in dismissing Thompson.

In its memorandum opinion, the district court exhaustively reviewed the evidence and found it "overwhelmingly" demonstrated that plaintiff was dismissed due to her incompetence, and that race was not a "motivating factor" in the dismissal. The district court, however, had assigned the burden of proof to Thompson and not to the school district. The improper assignment of the burden of proof "would be grounds for remand unless we were satisfied that the school district had met that burden." *Moore v. Board of Education, supra* at 711. We feel that the school district has clearly met its burden.

The evidence of Thompson's incompetency included testimony by Morton's principal and assistant principal, the district math supervisor, parents of Thompson's students at Morton, and the principal of Horace Mann. The criticisms of her teaching included a lack of organization, poor discipline, chaotic classes, improperly recorded grades, and unsatisfactory explanations and presentation of material to students.

Roger Bridenbaugh, the assistant principal at Morton, testified that he had become aware of many problems with Thompson during the school year. He formally observed her classes twice and developed his opinion on those occasions, through informal observation and through conversations with students, parents, the school counselor and Thompson herself. Bridenbaugh described her performance as unsatisfactory due to a lack of classroom control, poor organization and lack of preparation. He testified that Thompson's classes were chaotic and that students frequently left them without permission, only to wander the halls.

Dr. Lawrence Routt, Morton's principal, observed Thompson formally three times and prepared the final evaluation of her in May, 1976. In his observation reports, Dr. Routt indicated that her classes were poorly managed, too noisy and that students were antagonistic. He noted that the class seemed confused about what its assignment was and he called attention to her failure to answer questions or to give adequate explanations in class. He also described an incorrectly worked mathematics example presented by Thompson.

The school district's mathematics supervisor, Dave Peterson, testified at both the school board hearing and the district court trial. Peterson visited Thompson's class nine times, seven of which are documented. Twice Peterson and Thompson conferred at length regarding his observations, and on other occasions they discussed them briefly. Peterson testified, and his reports indicate,

that Thompson was inadequately prepared, that students wandered around and talked aloud in class, and that Thompson and her students seemed in continual conflict. He felt her presentations were substandard, were tied to the book and gave the students very little background or insight. He criticized her failure to adequately answer students' questions and her failure to explain a concept when several students were unable to answer a question regarding that concept. He felt she was not an adequate teacher and had made little improvement in spite of his many specific criticisms and suggestions.

Two parents testified before the school board on behalf of the administration. Robert Higgs, who holds a master's degree in mathematics, presented a letter he had written to Dr. Routt. Higgs complained about several incorrectly graded exercises completed by his daughter, Roberta, a student in Thompson's class. Roberta, who had consistently made the highest "1" grades in mathematics, had approached her father in confusion because she felt her correct answers were marked wrong and explained that her friends were having the same problem. Higgs reviewed the exercises and agreed that they were incorrectly graded. He also complained that Thompson did not adequately explain assignments before the students worked on them and that Thompson did not offer any explanations beyond those available in the book.[3]

Thompson's own testimony belies her claim that her discipline problems at Morton were motivated by racial hostility. She admitted having similar problems with discipline, classroom organization and student rapport in her years at Horace Mann Junior High. She herself rejected the idea that Morton was a hostile environment and testified that a maximum of thirteen of her 173 students were racially hostile. She indicated that she had no knowledge that any other black teacher or staff member encountered racial problems at Morton. Bri-

denbaugh, Routt and the superintendent all testified at trial that Thompson never indicated to them that her problems were racially motivated.

One further contention bears discussion. Thompson argues that even though she had problems at Horace Mann, her teaching was adequate for the black school and, therefore, should be adequate for a white school. We have stated that "if the complaints were not such as to require action against the plaintiffs while they were serving in the Negro school, the complaints would not constitute a valid basis for refusal of employment in the integrated school," *Jackson v. Wheatley School Dist. No. 28*, 430 F.2d 1359, 1363 (8th Cir. 1970), and we reiterate that proposition today. In *Jackson*, however, the teacher was ostensibly dismissed because of complaints received by the school board over a period of years regarding Jackson's failure to pay certain bills. That matter had been cleared up to the satisfaction of the board four years prior to the actual dismissal, however, and no new problems in that area had arisen since. By contrast, Thompson's incompetency as a teacher was specifically shown to exist during the year of her dismissal.

Additionally, school officials offered an explanation for the failure to dismiss Thompson during her years at Horace Mann. Clarence Barbee, the principal at Mann, testified both before the board and the district court that he submitted favorable evaluations of Thompson that were greatly at variance with his actual opinion of her teaching, which he considered unsatisfactory. Because of the racial tension and pressure existing in the community at that time, however, he did not feel that he, a black administrator, could recommend the dismissal of a black teacher. Barbee elaborated on this at trial, saying that Thompson's husband was an important member of the black community who supported Barbee's attempts to upgrade Horace Mann

**3.** A number of student and parent complaints are in evidence. To the extent that these are unverified, we give them little weight; further, we would expect areas of student and parent

dissatisfaction in the early years of integration. Here, however, several of the complaints were verified by the administration and faculty.

Junior High in the eyes of the black community, and that a recommendation of Thompson's dismissal at that time would have been a "catastrophe."

We feel that the foregoing evidence establishes clearly and convincingly that Thompson's dismissal was not racially motivated but was due to her incompetence as a teacher, and we affirm the judgment of the district court.

Thompson also advances the argument that she was denied substantive due process because insufficient evidence of her incompetency was presented to the school board. In light of our foregoing discussion of the evidence presented to the board, this argument is without merit.